Christian, J.
This is a writ of error to a j udgment of the circuit court of Shenandoah county.
The action was brought by the personal representative of Charles L. Noell, who was killed on the cars of the Baltimore and Ohio Railroad Company, at “Narrow Passage” bridge, in the county of Shenandoah. There was a verdict and judgment for the plaintiff for the sum *397 of $4,925, with interest, from the date of the verdict, April 30th, 1878; and to this judgment a writ of error was awarded by one of the judges of this court.
Several specific grounds of error are alleged in the petition'and relied upon in argument at the bar. Each be duly considered, though not in the precise order presented in the petition.
The first question raised in the bills of exception filed is, whether the circuit court erred in refusing to remove the case, on motion of the plaintiff in error, to the circuit court of the United States for the western district of Virginia. This question was determined by this court- in the case of the Balt. & Ohio R. R. Co. v. Wightman’s adm’r, 29 Gratt. 431. The plaintiff in error in that case was the same corporation against whom suit was brought and damages recovered in the case at bar. It was a suit, too, brought by the personal representative of a party killed at the same time and place at which the intestate of defendant in error was killed—both having lost their lives in the fearful calamity known as the “ Harrow Passage bridge disaster.”
In that case it was held that where a railroad company which was incorporated in another state leases a railroad lying in this state, and operates the same as owner thereof, and an injury occurs on said railroad, the person having the right of action for such injury may sue the railroad company in the courts of this state; and such company has no right to remove the suit to the federal court.
It was further held that, while the Baltimore and Ohio railroad, as a corporation of the state of Maryland, could ' have no legal existence outside of that state, yet, as the lessee of a Virginia railroad company, exercising all the functions and powers of the latter, it may be subject to all its duties and obligations, and that, so acting, it must be treated as 'a Virginia corporation gonad hoo the line of railroad under its control, so far, at least, as its liability to its own citizens is concerned.
*398 GomPany derives all its powers and privileges from' the charter of the company which owns the road; it must subject to all the duties imposed on that company, and amonS these is the obligation to answer in our own courts to our own citizens for any damage resulting from its con-
Without any further discussion of this question, it is sufficient to refer to the well considered opinion of Judge Staples in this very recent case against the same defendant,, and to the cases cited in that opinion.
I am, therefore, of opinion that the circuit court did not err in refusing to remove the case to the circuit court of the United States.
I am further of opinion that the circuit court did not err in overruling the demurrer to the plaintiff’s declaration. The questions raised by the demurrer are the same as those decided by this court in the case of Balt. & Ohio R. R. Co. v. Wightman’s adm’r, and reaffirmed in Mathews v. Warner’s adm’r, 29 Gratt. 570; which cases are conclusive in support of the judgment of the circuit court upon the demurrer.
Having disposed of these preliminary questions, we now proceed to consider the more important and difficult 1 questions affecting the merits of the case.
And first it is to be noted, that there was in this case no motion to set aside the verdict as contrary to the evidence; consequently we have no certificate of the facts proved, but only of so much of the evidence as may be necessary to give application Lo the instructions asked for on both sides. These were numerous, and very fully presented the legal propositions contended for by the counsel on each side.
The defendant in the court below (plaintiff in error here) asked for eleven specific instructions; all of which were given by the circuit court, and of course need not be considered by this court.
*399 The questions we have to determine arise upon the in-A structions given at the instance of the plaintiff in the court below, and which were assailed here as not the law
The instructions are as follows :
I. When injury or damage happens to a passenger by the breaking down or overturning of a railroad train, or breaking down of a bridge or wheel or axle, or by any other accident occuring on the road, the presumption prima facie is, that it occurred by the negligence of the railroad company; and the burden of proof is on the company to establish that there has been no negligence whatsoever, and that the damage has been occasioned by inevitable casualty, or by some cause which human care and foresight could not prevent.
II. The law, in tenderness to human life and limbs, holds railroad companies liable for the slightest negligence, and compels them to repel by satisfactory proofs every imputation of such negligence. When carriers undertake to convey passengers by the powerful but dangerous agency of steam, public policy and safety require that they be held to the greatest possible care and diligence. Any negligence or default in such case makes such carriers liable in damages under the statute.
3. The Baltimore and Ohio Railroad Company, as a common carrier of passengers, was bound to exercise the utmost degree of diligence and care in safely transporting Charles L. Hoell upon his journey.
4. The slightest neglect against which human prudence and foresight might have guarded, and hy reason of which his death may have been occasioned, renders such company liable in damages for such death.
5. Said railroad company is held by the law to the utmost care, not only in the management of its trains and cars, but also in the structure, repair, and care of the track and bridges, and all other arrangements necessary to the safety of passengers.
*400 6. Therefore if the jury believe from the evidence, that such prudence, foresight and skill were not used by said in respect to Narrow Passage bridge, by the breaking of which Charles L. Noell was killed, they should find for the plaintiff, and assess the damages for such kill-such sum as they may deem fair and just under all the circumstances of the case, such damages not to exceed ten thousand dollars.
7. In ascertaining such damages the jury should find the . sum with reference, first:
To the pecuniary loss sustained by Phoebe Ann Noell, the mother of said Charles L. Noell, by the death of said Charles L. Noell, fixing the sum at such sum as would be equal to the probable earnings of the said Charles L. Noell, taking into consideration the age, business capacity, experience, habits, energy and perseverance of the deceased during what would probably have been his lifetime, and the lifetime of said Phoebe Ann Noell, if he had not been killed.
Second. In ascertaining the probability of life, thejury have a right to determine the same with reference to recognized scientific tables relating to the expectation of human life.
Third. By adding thereto compensation for the loss of his care, attention and society to his mother. And
Fourth. By adding such further sum as they may deem fair and just by way of solace and comfort to his said mother for the sorrow, suffering and mental anguish occasioned to her by his death.
To the giving of which instructions, and each of them, the defendant by its counsel objected; but the court overruled the objection and gave the said instructions to the jury ; to which action and ruling of the court the defendant, by its counsel, excepted, and prayed that this, its bill of exceptions, be signed, sealed and enrolled, which is done accordingly.
*401 Now it is to be noted, that these instructions, from the first to the fifth inclusive, are in totidem verbis those which were passed upon, and declared by this court as correctly expounding the law in the case of Balto. & Ohio R. R. Co. v. Wightman’s adm’r (supra). With reference to them, this court said in that case, “ We do not deem it necessary to enter into any discussion of the propositions of law involved in these instructions. It is sufficient to say that they are fully sustained by the elementary writers, and by the opinions of the most respectable courts in this country. The decisions on this subject are given in Wharton on Negligence, §§627 to 661, inclusive; also § 422, and the notes to these sections ; Redfield on Carriers and Bailees, § 346. See also Farish & Co. v. Reigle, 11 Gratt. 697.”
Upon mature consideration of the arguments addressed to us by the learned counsel in the case before us, and upon a careful review of the authorities, we have no hesitation in affirming, that the first five instructions were properly given, as correctly declaring the law upon the facts proved in this case, respecting the duties and liabilities of common carriers.
The seventh instruction, on the second, third and fourth propositions therein affirmed, raises questions which were not raised or passed upon by this court in the case above referred to.
That instruction is in these words:
VIL In ascertaining such damages the jury should find the same with reference—
1st. To the pecuniary loss sustained by Phoebe Ann Noell, the mother of said Charles L, Noell, by the death of said Charles L. Noell, fixing the same at such sum as would be equal to the probable earnings of the said Charles L. Noell, taking into consideration the age, business capacity, experience, habits, health, energy and perseverance of the deceased during what would probably have been *402 his lifetime, and the lifetime of Phoebe Ann ISToell, if he had not been killed.
2d. In ascertaining the probability of life, the jury have a t° determine the same with reference to recognized scientific tables relating to the expectation of human life.
3d. By adding thereto compensation for the loss of his care, attention and society to his mother.
4th. By adding such further sum as they may deem fair and just by way of solace and comfort to his said mother for the sorrow, suffering and mental anguish occasioned to her by his death. .
To the first and second clauses of this instruction there ■can be no valid objection. The first clause affirms a proposition which has received the sanction of nearly all the appellate courts of this country -where the question has been considered, and was specifically affirmed by this court in Balt. & Ohio R. R. Co. v. Wightman’s adm’r (supra). It simply informs the jury that in ascertaining the damages, they shall assess the same with reference to the pecuniary loss sustained by the mother of the deceased, by fixing the same at such sum as would be equal to the probable earnings of the deceased; taking into consideration the age, business capacity, experience, habits, health, «energy and perseverance of the deceased during what would probably have been his lifetime, and the lifetime of his mother, if he had not been killed.
The only difference, in this respect, between this part of the seventh instruction and that given in Balt. & Ohio R. R. Co. v. Wightman’s adm’r is, that in that case the damages were to be assessed in reference to the pecuniary loss sustained by the wife and children of the decased, while in this case the instruction, by the first clause thereof, pointed to that pecuniary loss sustained by the mother of the deceased. The deceased in this case was not a married man; his mother, with whom he lived, and whose farm he managed, was a widow, and he her only son; and it was *403 proved that his services and earnings, as manager and •cattle dealer, were worth from $1,000 to $1,400 per year; and she, at the time of his death, caused by the “ Passage bridge disaster,” was fifty-eight years of age, and in sound health.
Although, therefore, the party for whose benefit the suit is brought is the wife and children in the one case, and the mother íd the other, the instructions in this respect affirm the same principle in regard to the assessment of damages for the pecuniary loss sustained.
Nor is there any valid objection to the second clause of the seventh instruction, which declares that “in ascertaining the probability of life, the jury have a right to determine the same with reference to recognized scientific tables relating to the expectation of human life.”
This, as an abstract proposition of law, is certainly true. See Field on Damages, §632, and cases cited in note. Neither the facts proved, nor all the evidence, were certified, and we are not informed by the record whether any such tables of the expectation of life were exhibited. It would certainly have been more regular if the court had specifically referred to the mortuary tables which are recognized by the courts of this commonwealth relating to expectation of life, and to have placed such tables before the jury. This may have been done, so far as the record shows, but whether done or not, it stated correctly an abstract proposition of law, which could not affect the verdict of the jury, and was not even to the prejudice of the plaintiff in error.
We come now to consider the last two clauses in the seventh instruction, which present a question of much more difficulty. By these it is affirmed that the jury may estimate the damages—
“3d. By adding thereto compensation for the loss of his care, attention and society to his mother.
“4th. By adding such further sum as they may deem *404 fa;r an(j just by way of solace to his said mother for the . . sorrow, suffering and mental anguish, occasioned to her by death.”
-N°w> I am free to admit that, but for the peculiar provisions of our statute and its phraseology, differing from those of all the other states in the Union, and differing in most essential particulars from the English statute, upon which most—indeed, nearly all—of the statutes of other states are founded, the instructions given in the clauses quoted would be plainly erroneous; for it must be admitted that in construing the English act, and all those of the American states founded upon it, the courts have very uniformly held that the damages provided for and recoverable under them are only such as are pecuniary and actual. Nor can anything be allowed as damages under these statutes (i. e., the English act and those which substantially follow it) in actions by or for the benefit of the persons entitled thereto, on account of the physical or mental sufferings of the deceased, or for the sorrow, suffering or grief of the surviving relatives who may be entitled to recover. See Field on Damages, § 630, and cases and statutes there cited.
The English act, and nearly all those of the American states, limit the recovery of damages for the death or injury caused by negligence or wrongful act, either in express terms or by necessary implication to such damages as are pecuniary or actual.
Now, the seventh section of our statute is totidem verbis with the corresponding section of the English act.
But the Virginia statute differs in a most material particular from the English act and those modeled after it, and, indeed, differs from the statutes of all the states.
In the sections which define the character of the damages recoverable under those statutes, the English act declares that “in every such instance the jury may give such damages as they may think proportioned to the injury re- *405 suiting from such death to the parties respectively for whose benefit such action shall be brought.” In New York and all other states in which their statutes are eled after the English act, the following terms, or those of like import, are used: “ The jury may give such as they may deem fair and just compensation with reference to the pecuniary injuries resulting from, such death,” &c. In our statute, instead of these words, or words of like import, being employed, it is declared that “ the jury in any such action may award such damages as to it may seem fair and just,” * * ' * in no case the sum recovered to “exceed the sum of ten thousand dollars.”
Certainly, in the Virginia statute, there are no words of limitation (except as to the amount of recovery), as in the Euglish act and those modeled on it, confining the jury in the assessment of damages to merely pecuniary injury, but by the very terms of the statute the damages are “such as to the jury may seem fair and just.”
We are bound to presume that the Legislature was familiar with the English statute and that of the other states of the Union, and of the English and American decisions under them. And it is a most significant fact that, with the English and American statutes before them, and familiar, as we must presume they were, with the decisions under them, the legislature, after following the English statute and the New York statute up to the point where the measure of damages in the one case is declared to be “proportioned to the injury,” and in the other “with reference to the pecuniary injuries resulting from such death,” at that point discarded these terms, and in lieu thereof adopted the language, “ Such damages as to the jury shall seem fair and just.” It is impossible to conceive that the omission of such language and the adoption of other terms meaning the very reverse, could have been accidental. We must conclude that it was done with a design, and that design was plainly, by all the recognized rules of con *406 struction, to declare that in an action for the death of a party caused “ by the wrongful act, neglect or default of any person or corporation,” the damages so recovered shall not be “merely ‘pecuniary injuries’ resulting from such death,” but “such damages as to the jury may seem fair and just” under the circumstances of each particular case.
One thing is certainly plain and palpable, under the true construction to be given to our statue, and that is, that the jury in assessing damages in .such a case are not confined to the pecuiary injury merely resulting from such death. This precise point was decided by the unanimous judgment of this court (the President being absent) in Mathews v. Warner’s adm’r, 29 Gratt. 570. In that case one error assigned was the refusal of the court to give the following instruction, asked for by the defendant, as follows: “If the jury, from the evidence, should find for the plaintiff, then the measure of damages in this action is the pecuniary loss sustained by the mother of the plaintiff’s intestate, by reason of the death of said Warner ¿ and the jury, in assessing the damages, must confine themselves to injuries of which a pecuniary estimate can be made in reference to a reasonable expectation of pecuniary benefit as of right or otherwise to his said mother from the continuance of the life of said Warner; and cannot take into consideration the mental suffering occasioned by his death to his said mother.”
This court held that there was no error in the judgment of the circuit court in refusing to give this instruction, and affirmed the verdict and judgment for the damages assessed by the jury. By this decision, in which this court reviewed the English act, and the statutes of the American states, and carefully construed our statute, the negative proposition was certainly affirmed, that the jury in assessing damages were not confined to injuries of which only a pecuniary estimate can be made in reference to a reasonable expectation of pecuniary benefit from a continuance of life of the deceased.
*407 I think this case is conclusive of the case before us. If, . as was held in that case, the jury is not confined in assessing their damages to the mere pecuniary loss to the vivors by the death of the deceased, certainly they may be governed by other considerations than the mere pecuniary loss. It is fair to presume, indeed the conclusion is irresistible, that the legislature, familiar with the statutes of other states, and cognizant of the decisions under them, that the damages under such statutes were confined by the courts to mere pecuniary loss, changed the phraseology of our statute so that the damages should not be proportioned to the pecuniary injuries only, but such “damages as to the jury may seem fair and just” under the circumstances of the particular case.
We must presume that the legislature knew the force and effect of its own enactments as compared with those of other states and the judicial construction given these statutes. The words used, not by accident, but with evident design, as already construed by this court in Mathews v. Warner’s adm’r (supra), certainly extended the statute beyond the scope of the English statute, and of all the American statutes, in declaring, in effect, that the jury, in estimating the damages in cases of the death of a party caused “ by the wrongful act, neglect or default of any person or corporation,” should not be confined to the mere pecuniary loss of the survivors for whose benefit the action may be brought.
It was no doubt the intention af the legislature, by this enactment, differing so essentially from the English and American statutes, to cut the gordian knot of the decisions which tied the jury down to a consideration of the mere pecuniary loss suffered by the survivors of the deceased; and to declare, in effect, that where any personas “death is caused by the wrongful act, neglect or default of any person or corporation,” even if such person be one whose life conferred no pecuniary benefit; if such person be an *408 aged or infirm father, or husband, or an invalid wife, or , ' ' . , affiioted child (often dearer to its parents because it is afthe death of such a person, so caused, should be the subject for a recovery of damages.
It follows that there being no pecuniary loss in such cases> and the jury not being confined by the statute (as already construed by this court in Mathew’s adm’r vWarner) to mere pecuniary loss to the survivors for whose benefit the action may be brought, it follows, I say, that mental suffering and anguish, want of comfort and solace, may be taken into consideration in the computation of damages sustained in the particular case. In other words, it is plain that under our statute, the jury, not confined to mere pecuniary loss, “may award such damages as to them may seem fair and just,” according to the facts and circumstances of each case. The only limit which the statute imposes is to confine the recovery in every case toa sum not exceeding $10,000.
It is earnestly insisted that such a construction of the statute will result in great injustice, and turn the jury in every case loose to award damages according to their own unrestrained notions as to compensation for the mental suffering and agony, and loss of comfort and solace in the case of a mother losing her child, or of a wife losing her husband, and kindred cases, unchecked by statutory enactments confining them to the actual pecuniary loss resulting from death. The answer to this view is—first, that there is in cases of this kind, as in all others, the same supervising power of the courts to correct verdicts rendered under manifest prejudice or passion, or grossly excessive, or obtained by fraud or corruption. But the better and all prevailing answer is, “Ua est seripta lex.” The legislature certainly had the right so to declare what the law is. And if in guarding human life as so sacred that, when it is destroyed “by the wrongful act, neglect or default of any person or corporation,” it holds such person *409 or corporation to a strict accountability, and makes them liable in damages, not alone for the pecuniary loss (to the survivors entitled to the benefit of the action), but to “such damages as to the jury may seem fair and just” in the particular case, surely no one can gainsay the power of the legislature so to declare the law. If the law as it is written is unjust and oppressive, and contrary to the better statutes (as contended) of the other American states and of England, it is for the legislature 'to change the law. This court can neither amend or annul the statute law, unless it be unconstitutional. That is the province of the legislature. We cau only interpret the law as we find it; and so interpreting it, we find no error in the construction given to it by the circuit court in its instructions.
It is proper to notice, before concluding this opinion, another objection very strenuously insisted on by the counsel for the plaintiff in error to the instructions given by the court to the jury, in which the court says; “In ascertaining such damages, the jury should find the same with reference,” &c. It is insisted that this is an imperative command to the jury that they must, in making up this verdict, consider certain facts, &c. I think this is a strained construction of the language of the court. The word as used, taken in connection with the other numerous instructions asked on both sides, plainly means that it is proper that the jury should take into consideration the matters indicated in the instructions.
Upon the whole case, I am of opinion that there is no error in the judgment of the circuit court, and that the same ought to be affirmed.
Staples, J.,
said he did not concur entirely in the opinion of the majority in Mathews v. Warner, nor did he express any actual dissent. He then had, and still entertains, doubt whether the jury are authorized to award vindictive or exemplary damages in cases like the present. In other *410 words, whether they are not confined to awarding damages. . ’ . ...... with reference to the pecuniary loss sustained. A majority of the court have decided otherwise in Mathews v. Warner and in the present case. He, therefore, yielded his doubts,, t • , ... . .. , and concurred in the opinion just delivered,
Anderson and Burks, J’s, concurred in the opinion of Christian, J.
Moncure, P., concurred in the results and most of the opinion of Christian, J.; but only because the question was decided by this court in Mathews v. Warner, 29 Graft. 576, when he was not present.
Judgment affirmed.