PETRIE v. COLUMBIA & GREENVILLE RAILROAD COMPANY.

1. In action by an administrator to recover damages for the killing of his intestate by a railroad train, evidence taken at the inquest is incompetent testimony, nor is it made competent by its introduction without objection at a former trial, for a new trial should be conducted as if there had been no previous trial.

2. Whether the evidence *shows* the existence of the facts alleged is for the jury. A non-suit can be demanded only when there is no evidence tending to show the material allegations.

3. Where the statute requires the whistle of a moving railroad engine to be blown and its bell to be rung, continuously for 500 yards before crossing a highway, a failure to do so is evidence of negligence; and the evidence here that the death of intestate resulted from such negligence was sufficient to carry the case to the jury.

4. The question of contributory negligence is a matter of defence to be passed upon by a jury. It cannot be determined on a motion for non-suit.

5. Our statute, which gives a right of action to the administrator of one negligently killed, for the benefit of the wife, husband, parent, and children of the deceased, and which declares that in such action the jury may give such damages as they may think proportioned to the injury resulting from such death to the parties, &c., does not exclude an action for the benefit of adult children of the deceased, although such children had no legal claim on their mother for support.

6. There was no error on the part of the judge in saying to the jury, that if the deceased went on the track for the purpose of committing suicide, it would be gross negligence, his charge showing that he only said this by way of illustration and not as excluding other acts from the class of gross negligence.

7. The attention of the engineer to the air-pump, not required by any unexpected emergency, is not sufficient excuse for his failure to give the signals required by statute.

8. Error cannot be assigned to such a portion of the charge as was purely speculative and could not possibly have affected the result.

9. It is the province of the judge to give to the jury a definition of the terms negligence and gross negligence, and it is the province of the jury to determine whether they are shown by the facts proved. Therefore the judge properly refused to charge that a given state of facts constituted gross negligence.

10. Being requested to charge that plaintiff could not recover, even though the engineer failed to give the signals required by statute, if the deceased did not observe proper care, the judge ruled that this was good law, interpreting the failure to observe proper care to mean that she was guilty of gross negligence. In this there was no error, for he thereby adopted the very words of the statute. *Gen. Stat.*, § 1529.

11. This court cannot review an order of the Circuit Judge refusing a new trial in a case like this, moved on the ground that the damages found by the jury are excessive.

12. It is not necessary, in a case like this, to prove the damages, in dollars and cents, sustained by the beneficiaries under the act. From the facts and circumstances submitted to the jury, they estimate the damages.

13. The payment of the funeral expenses of the deceased properly constitute an element in the amount of the damages.


Before NORTON, J., Spartanburg, October, 1887.


For a former appeal in this case, see 27 S. C., 63. In refusing the motion for a non-suit, the Circuit Judge said:

I have no doubt that the failure of the company to comply with statutory requirement is negligence. It would seem to be proper that negligence affirmatively appearing, no circumstances being given whether or not it contributed to the injury, to submit that question to the jury. Our attention is very often momentarily called off. Suppose this old woman's attention was momentarily called, as is frequently the case. It is for the jury to say from the circumstances of her head being tied up and the direction in which the wind was blowing, and all the circumstances, whether or not the continuous blowing of the whistle or ringing of the bell was necessary. I have no doubt upon the propriety of submitting the question as to whether it was contributory or not to the jury. It seems to me that there is enough evidence upon the question of the injury, under the peculiar wording of the statute and the guarded expression of the Supreme Court in that case of Davis, to submit that question to the jury. I therefore overrule the motion for a non-suit.

The charge to the jury was as follows:

In taking this case, gentlemen, into consideration, you are not to have a different regard for the interests of an individual from that of a corporation. An individual, whether rich or poor, whether well or unwell, whether sound or maimed, stands before you just exactly in the same condition as a corporation, a creature of the law. You are to find the facts without prejudice and apply them to the law as I shall give it to you. I am made the sole judge of the law, you the sole judge of the facts, on a trial of a case of this kind. So that you will be governed by the law that I give you and not by that of counsel. They present their views of the law; but it becomes my duty to settle what the law is.

Before I begin on the case proper, I desire to call your attention to one principle of law that was stated to you by counsel for the plaintiff. It is what is known as the rule in *Danner's Case.* That rule applies to the killing of stock, injuries to property, and not to injuries to a reasonable being. So that you will discard whatever law counsel has given you drawn from that rule in Danner's Case.

The allegations of the complaint are substantially that the defendant negligently killed the plaintiff's intestate, and that certain persons, the children of the deceased, have suffered certain injuries from that killing, and that the killing was without fault of the deceased. The defendant asserts by his pleading that he did not kill the deceased; if they did kill her, it was not negligently done, but it was caused by her own fault, and that therefore they are not responsible; and if they are responsible, that then the beneficiaries under the statute have not suffered any loss whatever.

So you will inquire first: Did the defendant's train kill Mrs. Petrie at a public highway crossing? That is the first inquiry that you are to make. Of course, if you should decide that in the negative, then you would find, without going any further, a verdict for the defendant. If you find it in the affirmative, then you will proceed to inquire whether the railroad company had its whistle blown, or a bell of thirty pounds weight rung continuously for five hundred yards before it reached the crossing where the killing is alleged to have been done on the afternoon of

March 15, 1884. If you come to the conclusion that they did ring the bell or blow the whistle continuously· for five hundred yards, then, of course, your verdict would be again for the defendant, although you might have found the first fact against them. But if you should come to the conclusion that they did not so ring the bell or blow the whistle, then you would be prepared to take another step in finding a verdict for the plaintiff.

The next question, then, for your inquiry would be, did that failure to obey the law contribute to the killing of Mrs. Petrie? That is, are you prepared to say that if the bell had been rung continuously or the whistle blown continuously for that distance, that the same result would have followed? It is the duty—and I will say it here so that you may consider the evidence in connection with these points of law as I go along—it was and is the duty of the plaintiff to show either positively or by the circumstances, all of which you are to take into consideration, whether that result would probably have followed. The preponderance of the testimony on that issue must be in favor of the plaintiff before he can recover. That is to say, the burden of proof is upon him. Of course, if you come to the conclusion that this neglect of obedience to the law did not contribute to the result, then, as before, your verdict would be for the defendant. If it did contribute, then you are prepared to go one step forward towards finding a verdict for the plaintiff.

If you come to a conclusion in favor of the plaintiffs upon these three points, then your next inquiry will be, was Mrs. Petrie guilty of gross or wilful negligence, or was she doing an unlawful act when the killing occurred? Gross negligence is what is known ordinarily as recklessness. Was she reckless? Did she go upon that track wilfully? Did she put herself wilfully there with that intention? Wilful negligence, gentlemen, is where one places himself in a place of known danger, as was illustrated to you in the case of one going upon a track for the purpose of committing suicide. That would be an extreme case of wilfulness. Or was she doing an unlawful act? The evidence before you, which is uncontradicted, is that a highway crossed the railroad at the point where this killing is alleged to have occurred. If you

believe that it did so cross the railroad, it was not an unlawful act for Mrs. Petrie to cross the railroad track at her pleasure. It might amount to that which would defeat the recovery in this case. It might amount to gross negligence or wilful negligence, but it still would not be an unlawful act. Now, if you come to the conclusion that this question is to be decided that she was grossly negligent or wilfully negligent or doing an unlawful act, then, of course, as before, your verdict would be for the defendant. But if you should come to the conclusion that she was doing neither one, then you would be prepared to go one step further in your verdict for the plaintiff.

Then your next inquiry would be, what damages are proportioned to the injury sustained by the children of Mrs. Petrie, who are the beneficiaries for whom this action is brought, and that you may not misunderstand what is meant by the damages proportioned to the injury, I will explain the law on that subject. Damages is the amount in this case which you would find in money for the injury as proven before you. You would not be allowed to take into consideration in the estimation of the damages in this case the wounded feelings of the beneficiaries. That is not what the law intends by an injury. An injury must be a pecuniary injury. You cannot give consolation for wounded feelings, for the sorrow one feels for the loss of a mother. But you will take into consideration what was necessarily paid for the expenses of burial. You would take into consideration the value of the services of a woman of the disposition, of the intellect, of the learning of a woman of the age that Mrs. Petrie was proven to have been to her children, taking into consideration the circumstances of the children. In other words, you, as nearly as you can, are to put yourselves in the place of the children and consider what the services of such a person would be worth to you pecuniarily, without reference to relationship, except so far as the relationship tends to enhance the probabilities that those services would be rendered in a better manner. Consider what those services would be reasonably worth to you. It is not necessary that any witness should have testified to the value in dollars and cents of these services; but it is the plaintiff's business to give you such data as will enable you to come to a conclusion as to what the

pecuniary loss was. You are not allowed to go into wild speculation over these matters, but to form a deliberate and candid judgment from the facts as proven.

I have certain requests handed me to charge you by the plaintiff:

I. "That by the statute law of this State, the railroad company is required to have a bell of at least thirty pounds and a steam whistle placed on each locomotive engine, and such bell shall be rung or such whistle sounded by the engineer or fireman at the distance of at least 500 yards from the place where the railroad crosses any public highway or street or travelled place, and be kept ringing or whistling until the engine has crossed such highway or street or travelled place." I charge you that that is the law of this case, and without repeating it, when I charge you that a particular thing is the law of this case as in these requests to charge, you will bear in mind that they are to be taken in connection with what I have already said to you is the law of the case.

II. "That if the testimony satisfies the jury that the requirements of the act were not complied with, or imperfectly complied with, and such failure contributed to the casualty, then from such failure the jury can find that the defendants were negligent." That is good law; I am not satisfied exactly with the grammar.

III. "That if the testimony satisfies the jury that the plaintiff's intestate was killed by collision with the engine or cars of the defendant at the crossing in question, and it appears that the corporation neglected to give the signals required by section 1483, and that such neglect contributed to the injury, the jury may give such damage against the defendant corporation as the jury may think proportioned to the injury resulting from such death to the parties respectively for whose benefit the action is brought, unless it is shown in addition to the mere want of ordinary care that the deceased was at the time of the collision guilty of gross or wilful negligence, or was acting in violation of the law, and that such gross or wilful negligence or unlawful act contributed to the injury." That is the law, and it is applicable to this case.

IV. "That the burden of proof is upon the railroad company to show such gross or wilful negligence or act in violation of law." That is the law, when it pertains to the negligence of the deceased.

Of course, it rests upon the plaintiff, as I have before stated to you, to show negligence in the defendant in the first instance.

V. "A mere want of ordinary care by the deceased does not constitute gross or wilful negligence." That is true. Gross or wilful negligence, as I have before explained to you, is different from want of ordinary care.

VI. "The nature of the alleged primary wrong of the defendant has much to do with the judgment, whether or not the alleged contributory fault was blameworthy. If it was of a negative character, such as lack of vigilance, and was itself caused or would not have existed or no injury would have resulted from it but for the primary wrong, it is not in law to be charged to the injured one, but to the original wrongdoer." That is an extract from a charge in another case, and is good law. But it ought to be prefaced with this statement, "Gross negligence of the plaintiff which contributed to the injury must always defeat the action; but the nature of the alleged primary wrong of the defendant has much to do with the judgment," &c., just as I have read it to you.

VII. "It was not an illegal act in Mrs. Petrie to return to her house, and if in doing so she was killed by the defendant, the proof of contributory negligence on her part, in order to have the effect of dispensing the law and absolving the defendant from all liability, must be clear and convincing. It is not to be assumed that a person in her senses will heedlessly imperil her own life." That is good law, and is applicable in this case.

VIII. "In this action, if defendant is liable, funeral expenses of deceased may properly be considered as among the elements of damage, if it is satisfactorily proven that the plaintiff has paid the same." That is the law, and it is applicable in this case.

I am requested by the defendant to charge you:

I. "Before the plaintiff in this action can recover, he must show that the failure on the part of the railroad employees to continuously blow the whistle or ring the bell from the signal post to the crossing contributed to the death of the deceased." If you assume that the signal post is 500 yards from the crossing, then this law is good law and applicable to this case.

I am requested to charge you, "If the deceased saw and heard the train approach the crossing, and notwithstanding this under-

took to cross the track of defendant in front of this train, and but for this act of hers she would not have been killed, then the plaintiff cannot recover." I refuse that charge. The question of what constitutes gross negligence is a question of fact for you under all the circumstances as proven before you. It is not for me to say whether any particular act constituted the gross negligence of which the deceased must have been guilty before the defendant would be excused from the penalty of killing the deceased, if otherwise it would have been found guilty. .

I am requested further to charge you that "If the jury believe that the deceased had notice of the approach of this train, the failure of the company's employees to continuously sound the whistle or ring the bell will not render the railroad liable, if the facts show that by the exercise of proper care and caution she could have avoided the injury." In that request the use is made of the words, "proper care." . If that word "proper" is to be understood by you as meaning the exercise of such care as would not be gross negligence, then that is good law. If the plaintiff's deceased had notice of the coming of the train, then the ringing of the bell or the blowing of the whistle, which was intended to give her notice, would not be material in this case; because the object of the ringing of the bell or the blowing of the whistle would have been accomplished in another way. But it must be shown from the circumstances that she had such notice before you will be able to say that she had it.

I am requested to charge you further, "It is the duty of a person approaching a railroad crossing, in order to avoid danger, to stop and look and listen; and if the deceased failed to use her sense of sight and hearing, and walked upon the track of defendant just in front of an approaching train in plain sight and hearing, and but for this act of hers would not have been killed, then she was guilty of such negligence as will defeat the plaintiff's right to recover." I refuse to charge you that. I am not the judge of what facts constitute gross negligence. You are to pass upon that.

"No damages can be allowed in actions of this kind as compensation for wounded feelings, or loss of comfort, or companionship

for the loss of a relative." That is the truth, and I have already so charged you.

I am further requested to charge you that "The jury will not be warranted in assessing damages against the defendant on mere conjecture or speculation of pecuniary loss or pecuniary benefit." Now, I have already charged you that that is the law. You may take into consideration from the circumstances as proven before you what the loss of the beneficiaries of this action was. It is the business of the plaintiff to furnish you with the data necessary to enable you to come to a conclusion upon what that loss was, upon reasonable grounds.

I am further requested to charge you, "That even if the deceased came to her death by the negligent act of the defendant, still the jury cannot find a verdict for the plaintiff, unless he has shown by proof that some actual pecuniary loss has been sustained by those for whose benefit this action has been brought, and in this event the verdict cannot exceed the actual pecuniary loss as shown by the proof." That is true, and I have already explained to you what you may find as pecuniary damages.

I am further requested to charge you that "Proof of the failure of the violation of the statute is not sufficient to determine the defendant's liability; and in order to maintain the action some proof must be given tending to show that the injury resulted from the omission to blow the whistle or ring the bell continuously for 500 yards." That is the law. You will recur, though, to the other parts of my charge in order to get at the full meaning of this request.

I am further requested to charge you that "If Mrs. Petrie saw or heard the train approaching, or if she by the exercise of reasonable care could have seen or heard it, then the defendant is not liable, even though it failed to blow the whistle or ring the bell as required by the statute." I refuse that. That is not the law for this case. In order to excuse the defendant, the deceased must have been guilty of gross or wilful negligence or have been doing some unlawful act.

I am further requested to charge you that "Even if the jury are satisfied in this case that the engineer was guilty of great negligence and want of care, yet the plaintiff cannot recover if the

deceased was also guilty of contributory negligence ; that is to say, that she did not observe proper care under the circumstances." Taking that to mean that if she was guilty of gross negligence in going upon the railroad track at that particular time, then the request would be good law.

I am also requested to charge you that "If deceased failed to observe proper care under the circumstances, the plaintiff cannot recover." I decline to submit to you the interpretation of that word "proper." I tell you that that word "proper" means such care as would not amount to recklessness.

I am further requested to charge you that "Contributory negligence never ceases to be a defence except where the injury complained of is shown to have been done wilfully or purposely, or where it was the result of such gross negligence as would imply wantonness or recklessness." That is good law. You have already been charged, however, that the gross negligence of the deceased would defeat this action if it existed.

Now, in regard to the burden of proof: it is upon the plaintiff to prove the killing of the deceased, and that it was by the negligence of the defendant, and the beneficiaries for whom he sues have had pecuniary loss, and how much pecuniary loss.

There are one or two questions as to the applicability of the evidence. The failure to blow the whistle or ring the bell as required by the statute, if such failure existed, would be negligence in the defendant, whether that failure occurred by reason of the employment of one of its officers in arranging some other parts of the machinery about the train, or not. It is the business of the company to provide officers to perform the duties which are required of them by the statute. The degree of negligence, if it occurred from the conduct of an officer of the defendant, would depend upon the peculiar circumstances of the case. If it was the ordinary business of an officer to be engaged at something else at a railroad crossing, then the defendant would be exceedingly culpable in not providing an additional officer to perform that duty. But if it arose from a sudden and unexpected emergency, then the negligence might be very slight. For instance, if some accident had happened on the train which required immediate and pressing attention, the withdrawal for a

moment or two of the officer's attention would be very slight negligence in the company.

There is another view which you may possibly take of this case. If a person should voluntarily put himself or herself upon the track and the engineer sees that person, it is his duty to endeavor to stop the train. To make no such effort when he saw such person would be gross negligence in the engineer. I decline to tell you what would amount to gross negligence.

In this kind of an action, remember that the slightest preponderance of the testimony is sufficient to carry the verdict.

*Messrs. Duncan & Sanders*, for appellant.

*Mr. J. S. R. Thomson*, contra.

October 9, 1888. The opinion of the court was delivered by

Mr. Justice McIver. The plaintiff brings this action, as administrator of Margaret W. Petrie, to recover damages in behalf of her children, for injury sustained by them by reason of her death, caused by the alleged negligence of the defendant company. The testimony on behalf of the plaintiff tended to show that the deceased was a widow lady about the age of seventy-nine years, living with her son-in-law very near the track of the railroad, and that she was killed by a passenger train while attempting to cross the track of the railroad at or near a point where it was intersected by a highway. At the time of her death she left several children, none of whom were minors, but they had all been settled off to themselves several years before the death of their mother. The old lady had a small income, sufficient for her own support, derived from the rent of her land, but at the time of her death she was living with her daughter, who had been in bad health for several years, and whose husband was also disabled, and was attending upon them. The testimony tended to show that the deceased was quite active and vigorous for a person of her years, and was in the habit of rendering valuable services to her children and grandchildren, especially in cases of sickness, as she claimed to have read and to have some knowledge of medicine. There was, however, no distinct evidence of the value, in

dollars and cents, of her services, the testimony being in general terms, that her services were of value to her children, in saving them physicians' bills, and in many ways being of material assistance to them, and there was also evidence that she was in the habit of assisting one of her sons, who had been disabled in the war, by giving him money and other things.

The evidence tended to show that the country was open at the place where the disaster occurred, and that an approaching train could be seen and heard for a considerable distance; though there was also evidence that, on the side of the track from which the deceased was probably returning at the time she met her death, the view at one point was obstructed by a depression in the ground and by a sort of embankment or mound, as the witnesses called it, upon which wood was piled for the train, and also that there were some trees or bushes near the track which, it was claimed, obstructed the view. The day on which the disaster occurred—March 15, 1884—it was cold and windy, the wind blowing down the road in a direction opposite to that from which the train approached, and when the body of deceased was found, her head was tied up with a veil and shawl, and she had on a large bonnet. The testimony was, that when the train reached the whistle post, some distance below the highway crossing, but how far was not shown, there were three or four short blows of the whistle on the engine, but there was no ringing of the bell, and the whistle was not kept blowing until the engine had crossed the highway.

At the close of plaintiff's testimony, counsel for defendant moved for a non-suit upon the grounds hereinafter more particularly stated, which motion was refused. The defence then went into their testimony, and first offered the testimony of Mrs. Neighbors taken before the coroner's inquest, which, at a previous trial of this case, had been offered by the defence and received then without objection. Plaintiff's counsel objected and the testimony was ruled out. Counsel for defendant then offered the testimony of B. P. Faker, the engineer of the train which caused the death of plaintiff's intestate, which had been offered in evidence by the plaintiff on a former trial of this case and received then without objection. This testimony was objected to by coun-

sel for plaintiff and was likewise excluded. After other testimony had been offered in behalf of the defence for the purpose of showing that the death of deceased was not caused by any negligence on the part of the defendant company, but was due to her own gross negligence, the case was submitted to the jury, under the charge of the court, who rendered a verdict in favor of the plaintiff for eight hundred and fifty dollars.

Defendant's counsel then submitted a motion for a new trial upon grounds which are mostly embraced in defendant's ninth, tenth, and eleventh grounds of appeal. This motion was also refused, and judgment having been entered in favor of plaintiff, defendant appeals and moves for a reversal of said judgment for the following alleged errors therein :

I. In overruling defendant's motion for a non-suit.

II. In not admitting in evidence the testimony of Mrs. Neighbors.

III. In not admitting in evidence the testimony of B. F. Faker.

IV. In charging, "Was Mrs. Petrie guilty of gross or wilful negligence * * when the killing occurred ? * * * Did she go upon that track wilfully ? Did she put herself wilfully there with that intention ? Wilful negligence, gentlemen, is where one wilfully places himself in a place of known danger, as was illustrated to you in the case of one going upon a track for the purpose of committing suicide."

V. In charging, "It is not necessary that any witness should have testified to the value in dollars and cents of these services."

VI. In charging, "In this action, if the defendant is liable, funeral expenses of deceased may properly be considered as among the elements of damage, if it is satisfactorily proven that the plaintiff has paid the same."

VII. In charging, "The failure to blow the whistle or ring the bell as required by statute, if such failure existed, would be negligence in the defendant, whether that failure occurred by reason of the employment of one of its officers in arranging some other parts about the machinery or not."

VIII. In charging, "If a person should voluntarily put himself or herself upon the track and the engineer sees that person,

it is his duty to endeavor to stop the train. To make no such effort when he saw such person would be gross negligence."

IX. In refusing to charge, "If the deceased saw and heard the train approach the crossing, and notwithstanding this undertook to cross the track of defendant in front of this train, and, but for this act of hers, she would not have been killed, then the plaintiff cannot recover."

X. In refusing to charge, "It is the duty of a person approaching a railroad crossing, in order to avoid danger, to stop and look and listen, and if the deceased failed to use her sense of sight and hearing and walked upon the track of an approaching train in plain sight and hearing, and but for this act of hers would not have been killed, then she was guilty of such negligence as will defeat the plaintiff's right to recover."

XI. In refusing to charge, "If Mrs. Petrie saw or heard the train approaching, or if she, by the exercise of reasonable care, could have seen or heard it, then the defendant is not liable, even though it failed to blow the whistle or ring the bell as required by the statute."

XII. In refusing to charge, "Even if the jury are satisfied in this case that the engineer was guilty of great negligence and want of care, yet the plaintiff cannot recover if the deceased was also guilty of contributory negligence; that is to say, that she did not observe proper care under the circumstances."

XIII. In refusing to charge, "If the deceased failed to observe proper care under the circumstances, the plaintiff cannot recover."

XIV. In refusing to grant defendant's motion for a new trial.

The second and third grounds of appeal, relating to the admissibility of testimony, will be considered together, as they are really governed by the same principle. There can be no doubt that the testimony of these two witnesses, taken before the coroner's inquest, was originally incompetent evidence in this case. Even on the trial of the party charged with the murder of the person over whose dead body the inquest was held, the testimony of a witness taken at such inquest, and who has since died, has been held incompetent (*State* v. *Campbell*, 1 Rich., 124); and certainly such testimony is not admissible on a trial between per-

sons who were not parties to the inquest and had no legal connection therewith.

Indeed, as we understand it, this proposition is conceded, but it is contended that inasmuch as this confessedly incompetent testimony was received without objection on the former trial of this case, it has thereby been made competent to introduce it in this trial, upon the well settled principle that where incompetent testimony has been received without objection, at the time it is offered, it thereby becomes competent. *Burris* v. *Whitner*, 3 S. C., 510, and many other cases to the same effect. But whether that principle can be applied to this case is what we are now called upon to determine. To so apply it would, it seems to us, ignore the nature and effect of a new trial, which is a trial *de novo*, and is conducted just as if there had been no previous trial. Neither party can rely upon the testimony as taken at the previous trial, nor is he bound thereby. On the contrary, each party must offer his evidence anew just as if there had been no previous trial, and when it is so offered it necessarily becomes subject to any legal objection which may be taken to it. Hence, while the testimony in question became competent in the former trial, because it was not objected to when offered, yet having been objected to when offered at the last trial it was properly excluded as incompetent on such trial. See 1 *Greenl. Evid.*, § 163, and cases cited in note 1.

The first ground of appeal imputes error to the Circuit Judge in refusing the motion for a non-suit. That motion was based upon the following grounds: "*First.* Because plaintiff has failed to show affirmatively any negligence on the part of defendant, causing the death of Mrs. Petrie. *Second.* Because plaintiff has failed to show that the failure to ring the bell or blow the whistle continuously caused or contributed to the death of Mrs. Petrie. *Third.* Because the facts show that the accident was caused by the gross negligence of the deceased. *Fourth.* That the plaintiff has failed to show any beneficial interest or pecuniary loss to her children." It will be observed that the phraseology used in all these grounds is open to objection, when the question is as to a motion for a non-suit, for in such a case the inquiry never is whether the evidence *shows* the existence of

a fact material to the plaintiff's case, as the question whether such a fact has been *shown* is a question exclusively for the jury. The true inquiry is, whether there is *any* evidence tending to show the existence of such facts as are material to the case of the plaintiff; and this inquiry is not presented by any one of these grounds. But waiving this, and assuming that the questions were presented in proper form, we will proceed to consider them.

The first two grounds are doubtless based upon the theory that while the failure to ring the bell or blow the whistle continuously until the engine had crossed the highway might be evidence of negligence on the part of the defendant, yet there was no testimony tending to show that *such* negligence caused the death of Mrs. Petrie, or in any way contributed thereto; for in the face of the express terms of the statute (*Gen. Stat.*, § 1483), requiring that the bell should be rung or the whistle sounded at a distance of at least five hundred yards from the point where a railroad crosses a public highway, and kept ringing or sounding until the engine has crossed such highway, and in view of the undisputed testimony that this positive requirement of the statute was not complied with, it could scarcely be denied that there was evidence of negligence on the part of the defendant.

But it being true, as contended for by appellant, that it is not sufficient to make out plaintiff's case, that there should be simply evidence of defendant's negligence, but that there must also be some evidence that the injury complained of was the result of such negligence (*Glenn* v. *C. & G. R. R. Co.*, 21 S. C., 466), we will proceed to inquire whether there was any evidence tending to show that the failure on the part of the defendant to give the signals required by statute in any way contributed to the injury complained of. We think there was some evidence tending to show that fact, and whether it was sufficient or not, was not for the Circuit Judge to determine on a motion for non-suit, but was exclusively for the jury, to whom it was properly left. The testimony is all set out in the Case, and we cannot go over it with a view of vindicating our conclusion. It is sufficient to say that the circumstances indicated by the Circuit Judge in refusing the motion for a non-suit, afforded some evidence that if

the requirements of the statute had been complied with, the disaster might not have occurred.   The high wind blowing at the time from a direction opposite to that from which the train was approaching, together with the manner in which the old lady's head was wrapped up, probably to protect her from the cold wind, may have been sufficient to prevent her from hearing the signal which *was* given, and may not have been sufficient to have prevented her from hearing the signal which *ought* to have been given.   We cannot say, therefore, that there was absolutely no evidence tending to show that the injury complained was the result of the negligence in failing to give the signal as required by the statute.

The third ground clearly cannot be sustained, for it has been frequently held that contributory negligence is a matter of defence which must be proved to the satisfaction of the jury, and cannot therefore constitute a ground for a non-suit.   *Carter* v. *Railroad Company*, 19 S. C., 20; *Darwin* v. *Railroad Company*, 23 *Id.*, 531, and many other cases.

We come next to the fourth ground of the motion for a nonsuit, and construing it in the same liberal spirit, it presents the inquiry whether there was any evidence tending to show that the parties for whose benefit this action is brought—the adult children of the deceased—had any beneficial interest in her life or suffered any pecuniary loss by her death.   It would be sufficient for the present inquiry to say that there was some evidence that the deceased was in the habit of rendering services to her children which were of value to them, and that would be enough to carry the case to the jury.   It is contended, however, that unless the children had some *legal* claim on the deceased for their support, no damages can be recovered for their benefit, and as the children of deceased were all adults, living to themselves, they could not possibly have any such claim.   This view is based upon the idea that the "injury" spoken of in the statute means only the deprivation of a *legal* right.   This, it seems to us, is a narrow view of the statute, and, on the contrary, its language repels any such view.   There is not only no language in the statute which requires such a restricted signification to be placed upon the word

"injury," but some of its terms indicate that such was not the sense in which the word was used.

The language of section 2184 of the General Statutes is as follows: "Every such action shall be for the benefit of the wife, husband, parent, and children of the person whose death shall have been caused, * * * and in every such action the jury may give such damages as they may think proportioned to the injury resulting from such death to the parties respectively for whom, and for whose benefit, such action shall be brought, and the amount so recovered shall be divided among the before mentioned parties in such shares as they would have been entitled to if the deceased had died intestate, and the amount recovered had been personal assets of his or her estate." Now, it will be observed that the provision is that the damages recovered, in case there are only children left, shall be divided equally amongst all of the children, whether some of them be minors or not; and this negatives the idea that the claim for damages rests upon the theory that the beneficiaries have been deprived of some legal right, for in the case supposed, while minor children would have a legal claim on their father for support, the adults would have no such claim, and yet by the terms of the statute no distinction is made.

Again, it will be noticed that our statute, unlike many others of a similar character, does not speak of *pecuniary* loss or injury which might possibly tend to show the injury for which damages are allowed, was confined to the deprivation of some *legal* claim susceptible of measurement by a pecuniary standard, but its language is broader, and gives the jury the right to award "such damages as they may think proportioned to the injury resulting from such death;" and as it is quite certain that the beneficiaries of the action may sustain injury by the death of a relative, over and above the loss of any *legal* claim which they may have upon such relative, it follows that the view contended for cannot be sustained. The conclusion which we have reached is sustained by high authority. In the case of *Railroad Company* v. *Barron* (5 Wall., 90), the view contended for by the appellant was pressed by counsel in an elaborate argument, but the court held that it was not necessary that the beneficiaries should have had a legal claim on the deceased, if he had survived, for their sup-

port. Our view is also supported by many other authorities cited in respondent's argument.[1]  Indeed, in the case we have cited from Wallace, *supra*, Nelson, J., in speaking of the view contended for by appellant, says: "This construction, we believe, has been rejected by every court before which the question has been presented."  It is quite clear, therefore, that there was no error in refusing the motion for a non-suit.

The language of the charge excepted to in the fourth ground of appeal is only partially quoted, and the purpose of it seems to be to convey the idea that the Circuit Judge intended the jury to understand, or left them to infer, that there could be no gross negligence on the part of the deceased, unless she went upon the track for the purpose of committing suicide.  But when the entire paragraph, from which these extracts are taken, is read (and for the purpose of a full understanding of the several exceptions, the entire charge should be embraced in the report of the case), it is plain that no such inference was open to the jury.  For the judge, after defining gross negligence in terms to which no exception has been taken, proceeded to submit the question of fact to the jury—whether Mrs. Petrie was guilty of gross negligence. What he said about suicide was only as an illustration, and was properly qualified by the following remark: "That would be an extreme case of wilfulness."

That portion of the charge excepted to in the seventh ground of appeal, taken in the connection in which it was used, was clearly not erroneous.  Where the statute requires a certain duty from a railroad company, the failure to perform such duty cannot be excused where the company has failed to provide a sufficient number of officers or agents to perform that and other necessary services in running the train.  Hence the fact that the engineer was engaged in arranging the air-pump while approaching the

---

[1] *Patt. Ry. Acc. L.*, §§ 405, 413; *Deer. Neg.*, § 422; 3 *Wood Rail. L.*, 1539, 1540; *Lett* v. *Railway Co.*, 21 Am. & Eng. R. R. Cas., 189; *Railroad Company* v. *Maryland*, *Ibid.*, 203; 3 *Suth. Dam.*, 282, 283; *Cregin* v. *Railroad Company*, 19 Hun, 341; *Railroad Company* v. *Noell*, 32 Gratt., 394; *Tilley* v. *Railroad Company*, 29 N. Y., 252; *Railroad Company* v. *Barron*, 5 Wall., 453; *Railroad Company* v. *Brown*, *Ibid.*, 90; *Pierce R. R.*, 388; *Carey* v. *Railroad Company*, 48 Am. Dec.

crossing, and for this reason failed to give the signal required by statute, would be no excuse for such failure, unless it was shown, as the judge suggested, that the necessity for working on the pump arose from a sudden and unexpected emergency ; and there was not only no evidence of this, but, on the contrary, the testimony shows that this work might just as well have been done before approaching or after leaving the highway crossing.

That portion of the charge which forms the basis of the eighth ground had no application whatever to the case as made by the testimony and was purely speculative. Hence, conceding that there was error in telling the jury that a supposed state of facts would constitute gross negligence, it is quite certain that such error could not possibly have affected the result in this case, for there was not only no evidence whatever that the engineer saw the deceased on the track in front of his train, but, on the contrary, the uncontradicted evidence is that neither the engineer nor any other officer connected with the train knew that she had been run over or knocked off the track.

The requests to charge in the ninth, tenth, and eleventh grounds of appeal, which also constitute the principal grounds for the motion for a new trial, were properly refused.   The fundamental vice in all of these requests, is, that they called upon the judge to pass upon questions of fact.   The rule, as we understand it, is that the province of the judge is to give the jury a definition of the term negligence, or gross negligence, and then it is the exclusive province of the jury to determine whether the facts proved in a given case constitute negligence or gross negligence. *Bridger* v. *Railroad Company*, 25 S. C., 30, 31.   As is well said by the Chief Justice, in that case, in speaking of this matter of negligence : "All agree as to the general definition—the absence of ordinary care.   But who is to say whether the facts alleged and proved show this absence—the judge or the jury ? The judge is required to charge the law, and the jury to find the facts.   The law, however, does not state what facts proved will show the absence of ordinary care.   It could not do so as applicable to every case which arises.   The cases involving this question are so different in their facts, so various, so complicated, and arising under so many different circumstances, that it would be

utterly impossible to lay down any general principle of law by which every special case could be measured and tested as to the fact of negligence, and which would enable a judge to say to the jury, as matter of law, such and such facts show the absence or presence of ordinary care;" and then he lays down the rule substantially as we have stated it.   Of course, the same rule applies where the question is as to gross negligence, as in cases of ordinary negligence.   This being the rule, it follows that the Circuit Judge committed no error in refusing to charge that the existence of certain facts precluded the plaintiff's right to recover; for that would, in effect, have been a charge that a given state of facts constituted gross negligence, whereas that was a question for the jury.   It will be observed that the question is not whether the judge erred in simply refusing to instruct the jury that it was the duty of a person approaching a railroad crossing to use his senses of sight and hearing in order to protect himself from the danger of a collision, but the question is, whether he erred in refusing to go further and instruct the jury that such failure was gross negligence, and would, in this case, defeat the plaintiff's right to recover.

The requests to charge which constitute the basis of the twelfth and thirteenth grounds of appeal were not really refused.   The statute (General Statutes, section 1529) provides that where a person is injured by a collision with a railroad train at a highway crossing, by reason of the negligence of the company to give the required signals, the company shall be liable for the damages thereby sustained, "unless it is shown that, in addition to a mere want of ordinary care, the person injured * * was, at the time of the collision, guilty of gross or wilful negligence, or was acting in violation of the law; and that such gross or wilful negligence or unlawful act contributed to the injury."   Nothing is said in the act about observing *proper* care, and hence the Circuit Judge, in dealing with these requests, declined to adopt the word "proper," but following the language of the statute, instructed the jury, as he had done before, that if the deceased was guilty of gross negligence which contributed to the injury, then she could not recover, and that, taking the words, if she did not observe *proper* care, to mean that she was guilty of gross negligence,

then the request was good law.   In this there certainly was no error, for he simply translated the incorrect language of the request into the more accurate terms employed in the statute.

The fourteenth ground of appeal has already been considered, except in so far as the motion for a new trial was based upon the ground that the damages given were excessive.   It is so well settled that the decision of the Circuit Judge upon this point is final, that it is only necessary to refer to some of the cases.   *Steele* v. *C., C. & A. R. R. Co.*, 11 S. C., 589, and the cases therein cited.

It only remains to consider the questions raised by the fifth ground of appeal, as to the mode of proving the amount of the damages, and by the sixth ground as to the elements which may enter into the estimate.   As to the former question, it is very obvious that in many cases, slander, &c., it is impossible to show by evidence the amount, in dollars and cents, of the damages sustained, and yet we have never heard it suggested even that the inability to do this precludes the jury, when the facts and circumstances are laid before them, from making their own estimate of the amount of the damages recoverable in such cases, and we see no reason why the same cannot be done in a case like this. Even if witnesses had undertaken to testify as to the amount of damages, in dollars and cents, which the beneficiaries in this action had sustained by the loss of their mother, such testimony could only have been the opinions or estimates of such witnesses, based upon the facts and circumstances of the case, and it seems to us that the jury was quite as competent to make such estimate as the witnesses would have been.   See what is said upon this subject by Nelson, J., in *Railroad Company*, v. *Barron*, *supra*.

As to the other question—whether the funeral expenses could properly constitute an element in estimating the amount of the damages—it seems to us that the authorities cited by respondent's counsel[1] in his argument, fully sustain the ruling of the Circuit Judge.

The judgment of this court is, that the judgment of the Circuit Court be affirmed.

[1] 3 *Wood Rail.*, 1539; *Pierce Rail.*, 397; *Patt. Acc. Rail. L.*, § 412; *Murphy* v. *R. R. Co.*, 88 N. Y., 445; *Deer. Negl.*, § 420.