WARD v. RICHMOND & D. R. Co.

*(Circuit Court, D. South Carolina. August 26, 1890.)*

RAILROAD COMPANIES—ACCIDENTS AT CROSSINGS.

Plaintiff attempted to drive over defendant's track at a street crossing, without stopping to look or listen, and was struck by a passing train, which he could easily have seen before he went on the track. The train was two hours behind the schedule time. Plaintiff's witnesses testified that they heard the whistle either at a crossing 500 yards distant, or at one 500 yards further; while defendant's witnesses, passengers on the train, testified the whistle was sounded at all the crossings, and the engineer testified to the same effect. *Held*, that a verdict in plaintiff's favor would be set aside.

On Motion for New Trial.

*Benet, McCullough & Parker* and *John G. Capers*, for plaintiff.

*Wells & Orr*, for defendant.

SIMONTON, J. The plaintiff, a farmer, residing a few miles from Greenville, and whose business took him into that city very frequently, had spent the day in town, and was returning to his home between 7 and 8 o'clock in the evening. He was driving in his wagon on West street, one of the streets of Greenville, and was in the act of crossing the track of the defendant at the West-Street crossing. Above this place, about 500 yards, is the Buncombe-Street crossing, and beyond that again is another crossing generally known as the "Mountain-Road Crossing," some 500 yards further. Just as defendant was in the act of crossing, a locomotive drawing a train of seven coaches came in collision with his wagon, knocked him out, and injured him. One approaching the West-Street

crossing can, for 300 yards, get occasional views of the railroad track in the direction from which the train was approaching on this occasion; and, for 50 yards from the crossing, the railroad track is visible for over 300 yards, partially obstructed by small bushes. In his examination the plaintiff admitted that he had been drinking on that day, and at the time of the accident was neither drunk nor sober. He approached, and went on the crossing without looking for, or listening for, any approaching train. The one which collided with him was a passenger train, two hours behind schedule time. Witnesses for plaintiff, resident in that locality, heard the whistle of the train either at the Mountain-Road crossing, or at the Buncombe crossing. Those for the defendant, all of them, but one, passengers on the train intending to get out at Greenville, and that one waiting for the coming train, say that the whistle sounded for all the crossings, followed by the long whistle for the station, in the act of crossing Buncombe street, and then by the cattle signal. The engineer, who testified that he blew all the crossing signals, said that he saw the wagon of the plaintiff when he was about 65 yards from it; that he blew the cattle signals, and put on his air-brakes, stopping his train just beyond the crossing, but too late to avoid collision. The train was well equipped. The case was submitted to the jury, notwithstanding the motion that they be instructed to find for the defendant. Two questions were submitted to them: Was the defendant negligent? If this were answered in the affirmative, was there contributory negligence on the part of the plaintiff? They were carefully instructed as to the law of the case. There were no exceptions to the charge. The verdict was for plaintiff, $1,100. The defendant moves for a new trial.

The general rule is that every one approaching a railroad crossing, at any time, must exercise ordinary care in the use of his sense of sight and of hearing in order to discover and guard against any approaching train. See Beach, Contrib. Neg. p. 191, § 63, and cases quoted; *Schofield* v. *Railway Co.*, 114 U. S. 617, 5 Sup. Ct. Rep. 1125. The statute law of South Carolina goes beyond this general rule. It requires a locomotive approaching a crossing like the one in this case to ring a bell or sound the whistle at the distance of at least 500 yards from the crossing, and to keep up the ringing or whistling until the locomotive has crossed the highway. Gen. St. S. C. § 1483. Section 1529 of the same chapter provides that, if one be injured in person or property by collision with the engine or cars of a railroad corporation at a crossing, and it appears that the corporation neglected to give the signals required by that chapter, and that such neglect contributed to the injury, the corporation shall be liable for all damages caused by the collision, unless it be shown that, in addition to mere want of ordinary care, the person injured was, at the time of collision, guilty of gross or willful negligence, or was acting unlawfully, and that such gross or willful negligence, or unlawful act, contributed to the injury. Under these provisions of the statute law of South Carolina the jury were instructed to inquire if the signals, herein provided for, were given. Their verdict answers this question in the negative. They were also instructed to inquire if the plaintiff was

guilty of negligence, gross or willful, which contributed to the injury. They were told that these terms were not synonymous; that gross negligence implied carelessness, want of apprehension of danger; willful negligence was recklessness, notwithstanding knowledge of danger. The one is passive, the other active. The verdict answers this question in the negative also. If the verdict is the solution of conflicting evidence, it will not be disturbed. Our inquiry then is, was there enough of undisputed testimony in the case to induce the conviction that the verdict on this point was against the evidence? It is difficult, if not impossible, to formulate a definition which will cover every case of gross negligence. The surrounding circumstances will always control the character of the act. What might be only a want of ordinary care under some circumstances would be gross carelessness under others. In *White* v. *Railroad Co.*, 9 S. E. Rep. 96, the supreme court of South Carolina say: "Gross negligence is the absence of that kind of care which even the most careless and indifferent would be expected to exercise under the existing circumstances." In the case before us the plaintiff, after dark, was approaching a railroad crossing with which he was perfectly acquainted. A train of cars was rapidly approaching. Although it did not give the continuous signal required by statute, it did give notice of its approach. The witnesses for plaintiff heard it whistle, either at the Mountain-Road crossing or at the Buncombe-Street crossing. Those for the defendant heard it whistle at both of these crossings, and then give the long whistle for the station. The first set of witnesses were residents of the locality, with no special interest in the arrival of the train. The other set were specially interested in the approach and arrival of the train at Greenville, and more on the alert for the signals. Notwithstanding this, the plaintiff continued on his course, got on the track, and was crossing it when the train was a little over 65 or 70 yards off, and easily visible, certainly, from that distance, taking no sort of precaution, using neither his eyes nor his ears. Had he listened, he must have heard the whistle, or the roar of the coming train. Had he looked, he must have seen its lights. It is impossible to avoid the conviction that, although he was neither drunk nor sober, nevertheless the drinks he had taken had induced a frame of mind which made him "careless and indifferent to consequences," and had led to "the absence of the care which a sober man, however careless and indifferent, would have exercised under the circumstances." Had he used his senses, he could have stopped. In not stopping, he contributed to his injury. The jury was fully advised as to the principles of law to which these facts would apply. Their verdict would indicate either that they mistook the principles or that, through bias or prejudice, they misapplied them. The frank admission by the plaintiff of the controlling fact that, in the act of crossing, he used neither his sight nor his hearing was entirely overlooked by the jury. Their verdict cannot stand. *Thurston* v. *Martin*, 5 Mason, 497. The case of *Petrie* v. *Railroad Co.*, 29 S. C. 303, 7 S. E. Rep. 515, resembling this case so much in its facts, does not conflict with this opinion. The supreme court do not deny that going upon a railroad track so cov-

ered up as to render hearing or sight impossible would be gross contributory negligence. The error for which they sent the case back was the expression by the circuit judge of his opinion on the facts; the rule in this state being that a judge cannot, by word, and perhaps by voice or gesture, by countenance or emphasis, aid the jury in their exclusive province,—the decision on the facts. In *Schofield* v. *Railway Co.*, *supra*, the supreme court of the United States sustained the trial judge in his instruction to the jury to find for the defendant, under circumstances very similar to those of the case at bar. Enter an order for a new trial.