WILLIAM F. COPSON *vs.* NEW YORK, NEW HAVEN, AND HARTFORD RAILROAD COMPANY.

Middlesex.   March 4, 1898. — May 20, 1898.

Present: ALLEN, HOLMES, KNOWLTON, & MORTON, JJ.

*Personal Injuries — Railroad — Passenger — Action — Inference of Due Care — Damages.*

Evidence that the plaintiff in an action for personal injuries occasioned by a railroad accident went with a witness to take a train at a station on the defendant's railroad, that the witness did not see the plaintiff get on the train, as he was fifty or a hundred feet from him, but saw him "getting hold of the last rail of the car, and he must have got on the train," and "after the train had gone he looked to see whether he was there and did not see him," and that within a few minutes after the accident, which happened to the train about an hour later at another station, he was seen at the latter station by several passengers, will warrant a finding that the plaintiff was a passenger on the train at the time of the accident.

In an action against a railroad corporation for personal injuries received by the plaintiff while a passenger on the defendant's train at H., there was evidence that when he started on his journey he was in perfect health, and that he had

always been in good health previously. There was testimony from numerous witnesses tending to show that he was in a peculiar mental condition at H. He had a wound on his hand, and one or two slight bruises on his head. The physician who attended him there testified that he was weak, trembling, nauseated, and in a cold perspiration, his pulse slow, and the pupils of his eyes were unusually dilated; that he seemed dazed, and refused to give his name. · The evidence tended to show that his subsequent physical and mental condition was such that, at the time of the trial, it would have endangered his life to leave home and come to court; and that, if he could have· been present, it would have been impossible for him to testify. *Held*, that the evidence warranted a finding that the plaintiff's condition was caused by an injury received at the time of the accident.

An inference of due care on the part of the plaintiff in an action for personal injuries received in a railroad accident is justified from evidence of the conductor of the train on which the plaintiff was a passenger, that he went through the train and took up the tickets of the passengers seven times between the station where the plaintiff entered the train and the place of the accident, that all the passengers had paid their fares before the accident, and that he did not remember seeing the plaintiff.

No exception lies to the allowance by the judge, sitting without a jury, in an action for personal injuries received in a railroad accident, in assessing damages, as compensation for the loss of ability to earn money, a sum equivalent to the present worth of an annuity of fifteen hundred dollars for ten years, computing interest at four per cent.

TORT, for personal injuries occasioned to the plaintiff while a passenger on the defendant's train. Trial in the Superior Court, without a jury, before *Blodgett*, J., who found for the plaintiff in the sum of $15,000; and the defendant alleged exceptions. The facts appear in the opinion.

*C. F. Choate, Jr.*, for the defendant.

*F. N. Wier*, for the plaintiff.

KNOWLTON, J. The defendant excepted to the refusal to rule that the plaintiff could not recover. The defendant's passenger express train ran into the end of an accommodation train as it was on the point of moving away from the station at Hyde Park at about half past five o'clock in the afternoon of October 24, 1895. The occurrence of such an accident, unexplained, is some evidence ·of negligence of the defendant or its servants. *White* v. *Boston & Albany Railroad*, 144 Mass. 404. *Mahoney* v. *New York & New England Railroad*, 160 Mass. 573, 579. *Hennessy* v. *Boston*, 161 Mass. 502.

There was evidence to warrant a finding that the plaintiff was a passenger on the express train at the time of the accident. A witness testified that he was at Pawtucket, Rhode Island, on that

day, and went with the witness to take a train for Boston which left at half past three o'clock, but was late for that, although in time for the train which left at fifteen minutes or twenty-five minutes past four o'clock. The witness said that he did not see the plaintiff get on the train, as he was about fifty or a hundred feet from him, but saw him "getting hold of the last rail of the car, and he must have got on to the train," and that "after the train had gone he looked to see whether he was there and did not see him." Within a few minutes after the accident which happened to this train at Hyde Park, he was seen at the station there by several passengers. None of them knew him, but from their testimony and the testimony of other witnesses who saw him that evening at Lowell, where he resided, there can be little doubt in regard to his identity.

There was testimony that when he left Pawtucket on that day he was in perfect health, and that he had always been in good health previously. There was testimony from numerous witnesses tending to show that he was in a peculiar mental condition at Hyde Park. He had a wound on his hand and one or two slight bruises on his head. The physician who attended him there said that he was weak, trembling, nauseated, and in a cold perspiration, that his pulse was slow, and that the pupils of his eyes were unusually dilated. He seemed dazed, and refused to give his name. The evidence tended to show that his subsequent physical and mental condition was such that at the time of the trial it would have endangered his life to leave home and come to court, and that if he could have been present it would have been impossible for him to testify. The evidence well warranted a finding that his condition was caused by an injury received at the time of the collision at Hyde Park.

The defendant contends that there was no evidence that he was in the exercise of due care, inasmuch as no witness remembers seeing him from the time when he parted with his friend at Pawtucket until he was in the station at Hyde Park. But the conductor testified to going through the train and taking up the tickets of the passengers seven times between Pawtucket and Hyde Park, and said that all the passengers had paid their fares before the accident. He did not remember seeing the plaintiff. This is evidence tending to show that the plaintiff was in a

proper place, and was conducting himself as careful passengers ordinarily do. Otherwise he would have been likely to attract the attention of the conductor, or of others on the train through whom the conductor would have received information of his conduct. There is a class of cases in which due care may be inferred from the absence of negligence, as well as from positive acts of diligence. *Mayo* v. *Boston & Maine Railroad,* 104 Mass. 137. *Maguire* v. *Fitchburg Railroad,* 146 Mass. 379, 384. *Mears* v. *Boston & Maine Railroad,* 163 Mass. 150. *Caron* v. *Boston & Albany Railroad,* 164 Mass. 523, 526. We are of opinion that the judge properly might infer from the evidence that the plaintiff was in the exercise of due care.

· The defendant excepted to the finding of the judge in regard to the damages. If we assume that this exception is open to the defendant, we are of opinion that no question of law is involved in it. The presiding justice, who tried the case without a jury, put upon a paper a memorandum which indicated his view of the facts on which his assessment of damages was founded. The only part of the finding to which exception is taken is to the amount allowed as compensation for the loss of ability to earn money. This the judge fixed at a sum equivalent to the present worth of an annuity of fifteen hundred dollars for ten years, computing interest at four per cent. The computation on this basis does not indicate that the judge thought it gave an ascertained mathematical measurement of the damages for the loss of earning capacity. It involves estimates which, at the best, were uncertain and merely approximate. Neither the degree of future disability nor the time that disability would continue could be told except as a probability, nor could the income or rate of interest that a fixed sum awarded as damages could be made to produce for a long period of years be known. If these elements could be exactly ascertained, the rest would be only a matter of computation. The objection to the method adopted is not that the judge could not find as a fact that the plaintiff's loss of earning capacity would probably be equal in the aggregate to fifteen hundred dollars a year for ten years, although it would not be precisely the same each year, but that there was no evidence of the cost of an annuity of that amount for that length of time. The actual cost of an annuity in the market was immaterial, except

as it might be evidence showing the opinion of experts as to the probable income which money will bring in the future. There was no reason to think that the plaintiff contemplated buying an annuity. A computation at a given rate of interest may be shown by experts, or may be made by the judge if he is sitting without a jury, or by the jury if they are competent to make it. It is no objection to a finding that a computation is made without the aid of mathematical experts. So too, the probable rate of income that a sum of money safely invested can be made to produce in the future may be estimated by a judge or jury from their general knowledge of investments, and of the condition of business, and of the probable uses to which property can be put. Every jury in assessing damages in certain classes of actions is at liberty to consider questions of this kind on their common knowledge, and without the aid of expert testimony. Whether in most cases sufficiently accurate data can be obtained to make such a method very helpful, we need not consider. That it is a legitimate method in those cases in which the tribunal assessing damages finds facts that make it applicable, we have no doubt.

*Exceptions overruled.*