JULIA F. ROONEY *vs.* NEW YORK, NEW HAVEN, AND HARTFORD RAILROAD COMPANY.

Suffolk.    January 11, 1898. — April 17, 1899.

Present: FIELD, C. J., HOLMES, KNOWLTON, MORTON, LATHROP, BARKER, & HAMMOND, JJ.

*Personal Injuries — Railroad — Instructions — Damages — Annuity.*

At the trial of an action against a railroad corporation for personal injuries sustained by the plaintiff, while a passenger on the defendant's train, which came in collision with another train, the evidence tended to show that, at the time of the accident, which occurred in October, 1894, she received a nervous shock which resulted in insanity. It appeared that ten months later a male acquaintance of the plaintiff about her age, one D., was run over by a train and killed, and not long afterwards she saw his dead body; and that two months afterwards another railroad accident occurred at H., and she saw the bodies of the injured persons lying in the railroad station a short time after the accident. There was evidence tending to show that these two occurrences had some effect on her mental condition. The judge instructed the jury that the defendant would not be liable if the plaintiff's condition was not caused by the accident to her, but by these two subsequent occurrences, or either of them; and further instructed them as follows: "If from all the evidence in the case you are unable to distinguish the cause of this mental disease, that is, if you are unable to distinguish whether it was the accident of October, 1894, or the accident to D., or the accident at H., that was the cause of this mental disease, it would be your duty to find for the defendant on that issue. That is, you are not to compare these various accidents one with the other and try to find out which had the most important effect, but if you find that they, combined together, or any two of them combined together, brought about this mental disease, it would be your duty on that issue to find for the defendant." *Held,* that no error appeared.

In an action against a railroad corporation for personal injuries sustained by the plaintiff, while a passenger on the defendant's train, which came in collision with another train, the judge, in his charge to the jury on the subject of damages, referred to a suggestion made by the plaintiff's counsel in his argument, that they "consider the difference between the earning capacity she had before the injury and after, and then set apart a capital sum, the interest of which would be equal to the difference between what her capacity was before the injury and afterwards," and said, "I call your attention to that suggestion, and suggest to you as reasonable men whether that is the proper rule." He then

pointed out one particular in which it would lead to a wrong result, and said, "I can make a suggestion for you to consider, but I do not suggest that as a rule of damages." He then stated the principles on which annuities were computed, and concluded as follows: "I do not suggest that as a rule for you to apply, but the only question is whether that is not a more reasonable plan than the plan suggested by the counsel for the plaintiff." *Held*, that, in the absence of any request by the defendant for an instruction on this point, there was no ground of legal objection to the charge. LATHROP, J. dissenting.

TORT, for personal injuries sustained by the plaintiff while a passenger on the defendant's train, which came in collision with another train. At the trial in the Superior Court, before *Hardy*, J., the jury returned a verdict for the plaintiff; and the defendant alleged exceptions to certain instructions to the jury, which appear in the opinion.

The case was argued at the bar in January, 1898, and afterwards was submitted on briefs to all the justices.

*C. F. Choate, Jr.*, for the defendant.

*J. E. Cotter*, for the plaintiff.

KNOWLTON, J. The defendant made no request for instructions to the jury, but excepted to two portions of the charge. The evidence tended to show that the plaintiff received a nervous shock at the time of the accident, which resulted in insanity. The accident occurred in October, 1894, and there was evidence that in August, 1895, an acquaintance of the plaintiff about her age, named James Dunn, was run over by a train and killed, and that the plaintiff not long afterwards saw his dead body. On October 24, 1895, another railroad accident occurred at Hyde Park, and the plaintiff saw the bodies of the injured persons lying in the railroad station a short time after the accident. There was evidence tending to show that these two occurrences subsequent to the accident to her had some effect on her mental condition. The defendant excepted to the charge of the judge in regard to its liability, in view of these subsequent events, which occurred before it became necessary to commit the plaintiff to a hospital for the insane.

We see no error in this part of the charge. The jury were instructed that the defendant would not be liable if the plaintiff's condition was not caused by the accident to her, but by these two subsequent occurrences, or either of them. The judge further said: "If from all the evidence in the case you are un-

able to distinguish the cause of this mental disease, that is, if you are unable to distinguish whether it was the accident of October, 1894, or the accident to James Dunn, or the accident at Hyde Park, that was the cause of this mental disease, it would be your duty to find for the defendant on that issue. That is, you are not to compare these various accidents one with the other and try to find out which had the most important effect, but if you find that they, combined together, or any two of them combined together, brought about this mental disease, it would be your duty on that issue to find for the defendant." This exception must be overruled.

The only remaining exception is to the part of the charge on the subject of damages. The judge first gave instructions on that subject, referring to the different elements of damage, and then proceeded as follows: " Evidence has been introduced as to her earning capacity before the injury and after the injury. You are to compensate her for that. If she has suffered any loss of capacity, you are to compensate her for that. I can make you no suggestions as to what you ought to do with reference to computation of damages upon that point. If you find this is only temporary in its nature, and you are satisfied she will recover within a short time or a longer time, it is for you to say what she ought to receive by reason of the injury to her capacity to earn wages by labor. If you find on all the evidence that this is a permanent injury, and that for the rest of her life she will be deprived of the ability to labor that she had before the injury, it is for you to say what she ought to receive as compensation. Counsel for the plaintiff made some suggestion to you as to a rule for you to consider. He afterwards stated he would not state it as a rule, and I shall not state it as a rule, and I wish you to understand it, — I only make the suggestion. The suggestion was made that you were to consider the difference between the earning capacity she had before the injury and after, and then set apart a capital sum, the interest of which would be equal to the difference between what her capacity was before the injury and afterwards. I call your attention to that suggestion, and suggest to you, as reasonable men, whether that is the proper rule. Supposing that you should adopt that rule of estimating these damages, you can see

very well for yourselves as business men that you would be providing a certain sum to be paid to her yearly for interest as long as she lives, and at her death there will be a certain sum in capital which would go to her next of kin.  Now you are not here to assess damages for the benefit of the next of kin, and I do not think that the counsel for the plaintiff would claim that. I only suggest this to you, whether that would be reasonable for you to adopt that as a rule for compensation, — to set apart a certain sum which should go to her next of kin.  I can make a suggestion for you to consider, but I do not suggest that as a rule of damages.  As some of you know, as business men, there is such a thing as an annuity; that is, a person may purchase an annuity.  That annuity, of course, expires with the life of the individual, and you have to consider the reasonable probabilities of the life of that individual in providing that annuity, or in purchasing that annuity, and it is such a sum as will probably expire with the life of the individual, that is, a certain sum which perhaps, taking the interest and a portion of the principal each year, will provide a certain sum annually.  I do not suggest that as a rule for you to apply, but the only question is whether that is not a more reasonable plan than the plan suggested by the counsel for the plaintiff."  The suggestion made by the plaintiff's counsel in the argument referred to in the charge was not objected to by the defendant, and no request was made for instructions in regard to it.  The effect of the judge's reference to it in his charge was to point out one particular in which it would certainly lead to a wrong result.  He then stated the principle on which annuities were computed, showing that the sum required to purchase an annuity was "a certain sum which perhaps, taking the interest and a portion of the principal each year, will provide a certain sum annually."  Herein he pointed out the difference between the method suggested by the plaintiff's counsel and the true method of reckoning an annuity.  He was careful at the same time to tell the jury that he did not suggest it as a rule for them to apply, and virtually to say that, if the principle applicable to the purchase of annuities was to be applied at all, it should be applied with a correction of the method proposed by the plaintiff's counsel.

In the absence of any request by the defendant for an instruction on this point, either before or after the charge, we are of opinion that there is no ground of legal objection to the charge. It seems clear that, if all the elements entering into the problem could be accurately determined, the principle applicable to the purchase of an annuity would enter into the determination of the amount of damages to be allowed to the plaintiff for the loss of ability to earn wages.   It was so held by this court in *Copson* v. *New York, New Haven, & Hartford Railroad,* 171 Mass. 233, and there are many cases in other jurisdictions to the same effect.   *Vicksburg & Meridian Railroad* v. *Putnam,* 118 U. S. 545, 556.   *Sauter* v. *New York Central & Hudson River Railroad,* 66 N. Y. 50.   *McDonald* v. *Chicago & Northwestern Railroad,* 26 Iowa, 124, 140.   *Central Railroad* v. *Richards,* 62 Ga. 306.   *Richmond & Danville Railroad* v. *Allison,* 86 Ga. 145. *Louisville, Cincinnati, & Lexington Railroad* v. *Mahony,* 7 Bush, 235.   *Walters* v. *Chicago, Rock Island, & Pacific Railway,* 36 Iowa, 458, and 41 Iowa, 71.   *Baltimore & Ohio Railroad* v. *Noell,* 32 Gratt. 394.   *Kansas Pacific Railway* v. *Lundin,* 3 Col. 94. *Denver, South Park, & Pacific Railway* v. *Woodward,* 4 Col. 1. *The D. S. Gregory,* 2 Ben. 226, 239.   *St. Louis, Iron Mountain, & Southern Railway* v. *Needham,* 52 Fed. Rep. 371.

The practical difficulty in using annuity tables in cases of this kind, and in making computations upon the principle on which annuity tables are founded, is that there are too many elements which are uncertain, and which cannot be reduced to any close approximation to certainty.   These tables are usually computed on the probabilities for sound lives, while in the cases on trial there are often many circumstances which make the probabilities as to length of life very different from those estimated in the tables.   In estimating damages for personal injury, the amount to be allowed for loss of ability to earn money depends upon conditions which are not constant, but which vary from many causes.   The physical condition of the plaintiff would very likely have changed from time to time from other causes if there had been no accident.   His physical condition is usually likely to change as the years go on after the accident.   The income to be obtained from labor or effort in any given calling is not a constant quantity from year to year as time goes on, but the ability

to procure employment and the prices paid for services are likely to change. For these and other reasons annuity tables will seldom be found helpful in a trial of such cases, and if they are used, the jury should be carefully instructed to apply them only so far as the facts found correspond to those on which the tables are computed. So, too, a jury can apply the principle on which annuities are purchased only after they have found facts which form a proper basis for such a computation; but if all such facts are found and made definite, the principle on which such tables are computed can properly be used in estimating the amount to be allowed as a present sum to compensate for a probable annual loss for a probable term of years.

We do not think the judge said anything which misled the jury in this case. He was careful to leave them to follow his original instructions, and to tell them that he did not suggest an estimate of the value of an annuity. He could not tell them that they could not find the facts to be such as to furnish a proper basis for such a mathematical computation if they, as men of intelligence, knew how to make it. It was for them to find the facts, and then to use methods of computation applicable to them.                              *Exceptions overruled.*

LATHROP, J. I am unable to agree with the opinion of the majority of the court, that the suggestion of the judge in regard to an annuity did not prejudice the defendant. To my mind it was clearly the duty of the judge, as the matter had been called to the attention of the jury by the counsel for the plaintiff, to state to them what the rule of law was; and that this duty was not performed by suggesting for their consideration whether a certain other rule was not a more reasonable one. As the matter was left to the jury, they might adopt either the suggestion made by the counsel for the plaintiff, or that made by the judge, or any other they saw fit. Cases ought not to be tried in this way. No evidence was introduced at the trial upon which the cost of an annuity could be based. The plaintiff was earning nine dollars a week while she worked. There was no evidence of her probable length of life, or the cost of an annuity, which would give her nine dollars a week. In the absence of evidence, the jury were left to grope in darkness.

There are, without doubt, authorities which allow the admission in evidence of standard life tables, which show at any age the probable duration of life, for the purpose of aiding the jury in estimating the probable duration of the life of the person injured or killed by the negligence of another. *Vicksburg & Meridian Railroad* v. *Putnam*, 118 U. S. 545, 556. *Sauter* v. *New York Central & Hudson River Railroad*, 66 N. Y. 50. *McDonald* v. *Chicago & Northwestern Railroad*, 26 Iowa, 124, 140. *Central Railroad* v. *Richards*, 62 Ga. 306. *Louisville, Cincinnati, & Lexington Railroad* v. *Mahony*, 7 Bush, 235. *Walters* v. *Chicago, Rock Island, & Pacific Railway*, 36 Iowa, 458, and 41 Iowa, 71. *Baltimore & Ohio Railroad* v. *Noell*, 32 Gratt. 394. *Kansas Pacific Railway* v. *Lundin*, 3 Col. 94. *Denver, South Park, & Pacific Railway* v. *Woodward*, 4 Col. 1. But these cases do not go further, and with the exception of the case first cited there is no suggestion that annuity tables are admissible for any other purpose than to show the probable duration of life.

It is obvious, however, that if such evidence is admissible it is only to establish one element in the problem to be solved. Tables of this kind are based merely upon average lives, and the condition of the life of the person injured must be ascertained. So also allowance must be made for loss of time, by sickness or otherwise, and the diminution of earning power which attends old age. The admission of such tables by themselves would be of very little, if of any value.

In *Vicksburg & Meridian Railroad* v. *Putnam*, 118 U. S. 545, it is said: " In an action for a personal injury, the plaintiff is entitled to recover compensation, so far as it is susceptible of an estimate in money, for the loss and damage caused to him by the defendant's negligence, including not only expenses incurred for medical attendance, and a reasonable sum for his pain and suffering, but also a fair recompense for the loss of what he would otherwise have earned in his trade or profession, and has been deprived of the capacity of earning, by the wrongful act of the defendant." It is then added, " In order to assist the jury in making such an estimate, standard life and annuity tables, showing at any age the probable duration of life, and the present value of a life annuity, are competent evidence." It was however held that an instruction to give an annuity for future

earning power was erroneous, and general instructions to the jury were considered more appropriate. This rule has been followed in later cases. *Richmond & Danville Railroad* v. *Allison*, 86 Ga. 145. *St. Louis, Iron Mountain, & Southern Railway* v. *Needham*, 52 Fed. Rep. 371.

But there is very little authority for the admission in evidence of annuity tables, or for the proposition that damages may be assessed on the basis of a sum which, according to such tables, will give an annuity for life. In *The D. S. Gregory*, 2 Ben. 226, 239, where a passenger on a ferryboat was injured by a collision, Judge Blatchford, then a district judge, after stating various matters for which the libellant was entitled to recover, said: "The libellant was, at the time of the accident, about forty years of age. The sum required, according to the Northampton tables, to produce, at that age, an annuity for life, of $456, is $4,881.48. This sum, added to the $1,000 before mentioned, makes $5,881.48." He then stated that he thought that adding a sum for physical pain and mental suffering would make the amount claimed in the libel $10,000, a proper sum to be awarded. The decree for the libellant was affirmed by the Circuit Court, with a slight variation, but the case does not appear to have been reported. An appeal was then taken to the Supreme Court of the United States, which then had jurisdiction in admiralty of questions of both law and fact, and the decree of the Circuit Court was affirmed. 9 Wall. 513. The opinion says nothing about an annuity, and the question of damages is disposed of in these words: "The extent and character of the injuries sustained by the libellant are not disputed; and we do not think the amount at which her damages were assessed by the District Court, and which was approved by the Circuit Court, at all excessive."

In England it was many years ago said by Baron Parke, in charging the jury in the case of *Armsworth* v. *Southeastern Railway*, 11 Jur. 758: "You are not to consider the value of his existence as if you were bargaining with an annuity office; for in that view you would have to calculate all the accidents which might have occurred to him in the course of it, which would be a very difficult matter. I therefore advise you to take a reasonable view of the case and give what you consider a fair compensation."

The case of *Rowley* v. *London & Northwestern Railway*, L. R. 8 Ex. 221, which has been sometimes cited in support of the proposition that annuity tables are admissible, stands on its own peculiar facts. The person for whose death the action was brought, under the St. 9 & 10 Vict. c. 93, §§ 1, 2, had covenanted to pay an annuity of £200 to his mother during their joint lives. The action was brought for the benefit of the mother, and it was held that, as she had lost an annuity by the negligence of the defendant, the payment of it being unsecured except by the personal covenant of the person killed, there was no objection to the jury estimating as damages what would buy an equally good annuity.

There is no occasion to consider whether this court should follow this case, where the circumstances were similar. It is manifest that the case is not an authority for the general proposition that damages in an accident case may be awarded on the basis of an annuity.

In the important case of *Phillips* v. *London & Southwestern Railway*, 5 Q. B. D. 78, 81, the jury were instructed that they were not to give the value of an annuity of the same amount as the plaintiff's average income for the rest of his life, for that would be to disregard the contingencies; and it was held by the Court of Appeal that there was no misdirection. A new trial was however granted, on the ground that the damages awarded were inadequate. The case was afterwards tried before Chief Justice Coleridge, who gave the jury general instructions, without any reference to an annuity, and his instructions were held to be correct by the Queen's Bench Division and by the Court of Appeal. 5 C. P. D. 280, 49 L. J. (Q. B.) 233. It was said by Lord Justice Cotton: " In my view a fair compensation for the pecuniary loss is not to be arrived at by any arithmetical process; it cannot be said that the amount of the income being known, the loss is reduced to a mere matter of calculation. Lord Coleridge has not taken this course, but he has directed the jury to look to the nature of the income, the probability of its continuance, and the circumstances upon which it depended. The plaintiff is not to receive an annuity for the rest of his life calculated on the amount of his income; it was possible that he might have been disabled by illness or other causes from continuing to earn it; after taking into account the chances affect-

ing the income, the jury were to say what, in their opinion, was a fair compensation for the disability, whether permanent or temporary, under which the plaintiff came of practising his profession, and earning the income which he previously enjoyed."

The case of *Copson* v. *New York, New Haven, & Hartford Railroad,* 171 Mass. 233, was heard by a judge, without a jury. He found for the plaintiff, and assessed damages in the sum of $15,000. The opinion states that the judge " put upon a paper a memorandum which indicated his view of the facts on which his assessment of damages was founded," and that he allowed for the loss of ability to earn money " a sum equivalent to the present worth of an annuity of $1,500 for ten years, computing interest at four per cent." This court, on exceptions, refused to set aside the finding, apparently on the ground that no question of law was involved, for it is said in the opinion: " The defendant excepted to the finding of the judge in regard to the damages. If we assume that this exception is open to the defendant, we are of opinion that no question of law is involved in it." The judgment appears to have been based upon the ground that the judge had a right to ascertain the damages in any way he saw fit, and that what was written by him did "not indicate that the judge thought it gave an ascertained mathematical measurement of the damages for the loss of earning capacity." It is added: " Neither the degree of future disability nor the time that disability would continue could be told except as a probability, nor could the income or rate of interest that a fixed sum awarded as damages could be made to produce for a long period of years be known."

I see nothing in the decision in this case which warrants a judge in instructing a jury that they may estimate the damages on the basis of an annuity. Such a rule would be contrary to the rule established in England, and by the Supreme Court of the United States. It also has no support in this country. See cases before cited. In this Commonwealth the rule of damages which governs in cases of injury by the negligence of another has been carefully stated. *Ballou* v. *Farnum,* 11 Allen, 73. I see no occasion to adopt either the rule contended for by the plaintiff's counsel or that suggested by the court, and am of opinion that what was said tended to mislead the jury. I think there should be a new trial.