[No. 21782. Department One. July 8, 1929.]

WILLIAM BORLAND, *Respondent*, v. PACIFIC MEAT & PACKING COMPANY, *Appellant*, ROBERT M. THOMPSON *et al.*, *Defendants.*[1]

[1]Reported in 279 Pac. 94.

*Poe, Falknor, Falknor & Emory,* for appellant.

*Vanderveer & Levinson,* for respondent.

TOLMAN, J.—This action was instituted by respondent, as plaintiff, to recover for personal injuries received as the result of a collision between a truck, owned and operated in the business of appellant, and an automobile, owned by the defendants Thompson; respondent himself occupying the position of an innocent bystander. The cause was tried to a jury, resulting in a verdict in favor of defendants Thompson and against the appellant in the sum of $8,000. A judgment was entered on the verdict and this appeal followed.

Appellant does not question the sufficiency of the evidence to sustain the verdict, nor the correctness of the instructions given to the jury. There are several minor assignments of error, based on the admission and exclusion of the evidence, but, after careful examination, we are satisfied that none of these is well taken. The principal assignments go to the admissibility of annuity tables, or the cost of an annuity, misconduct of counsel for respondent in his argument to the jury, and the amount of the verdict.

Respondent testified that he was fifty-six years of age, or perhaps fifty-seven, and there was evidence that he had told others that he was sixty-six years of age. There was also evidence from which the jury may have concluded that respondent was permanently injured, and would be unable to ever again follow his usual occupation or any other gainful employment within his capacity. Life expectancy at the various ages referred to was shown by mortality tables. Thereupon a witness engaged in the business was called, who explained what an annuity is and then testified that, at established rates, an annuity of $100 per

month, or $1,200 per year, would cost at the age of 56, $15,004.20; at the age of 57, $14,638.20, and at the age of 66, $11,209.40.

No objection was made to the manner or form in which this proof was offered, but then and now appellant urges that any proof of the cost of an annuity is improper, because the evidence tends to show that he was not a sound man prior to the injury; that his earning days might have been brief if no accident had intervened; and if he lived out his expectancy, there was no assurance that he could have continued to earn until his death, and almost certainly not at the rate of $100 per month, which was approximately his earning capacity before the injury.

Such considerations are not peculiar to this particular case, but must inhere, more or less, in all personal injury cases.

Mortality tables, which are generally received in evidence, are based upon the law of averages, and like objections might be urged to them on the basis of the state of health of the particular person immediately before the injury. All such matters can be argued to the jury, and the true purpose for which such evidence is admitted can be, and should be, covered by instructions when requested. Upon this point, appellant relies upon *Rooney v. New York, N. H. & H. R. Co.*, 173 Mass. 222, 53 N. E. 435, where the reasons against the use of annuity tables are well stated as follows:

"The practical difficulty in using annuity tables in cases of this kind, and in making computations upon the principle on which annuity tables are founded, is that there are too many elements which are uncertain, and which cannot be reduced to any close approximation to certainty. These tables are usually computed on the probabilities for sound lives, while in the cases on trial there are often many circumstances which

make the probabilities as to length of life different from those estimated in the tables. In estimating damages for personal injury, the amount to be allowed for loss of ability to earn money depends upon conditions which are not constant, but which vary from many causes. The physical condition of the plaintiff would very likely have changed from time to time from other causes, if there had been no accident. Her physical condition is usually likely to change as the years go on after the accident. The income to be obtained from labor or effort in any given calling is not a constant quantity from year to year as time goes on, but the ability to procure employment, and the prices paid for services, are likely to change.''

Also upon *McCaffrey v. Schwartz,* 285 Pa. St. 561, 132 Atl. 810, in which it is said:

''After taking into account the income itself, the circumstances under which it was earned by plaintiff, and all factors affecting the likelihood of its continuance, increase, or diminution, as unaffected by the accident, the jurors are to say what, in their opinion, is fair compensation for the impairment of earning power, whether permanent or temporary, under which plaintiff suffers because of the accident; and in order to work justice, the jury would have to understand that present value tables could not be applied until the probable expectancy of the life in question had been decided and the amounts of future yearly losses determined. As pointed out earlier in this opinion, such losses are those due to diminution of earning power, and, as before indicated in the immediately preceding paragraph, usually a time arrives toward the end of the average man's life when his earning power becomes less and less; in other words, the sums or losses to be decided on and reduced to their present value are variable in that, after a certain time, to be determined in every case by the jury, the annual earnings generally become smaller each year. To expect a jury to determine these dates and amounts, and then to apply the tables and reach present values, is to expect the impossible, as long experience has shown. The question

is, What, in the light of this experience, should now be held as to the admissibility of such tables at a jury trial? Do they in fact aid the jury to make proper calculations, or does their presence almost inevitably tend to their misuse, or, in other words, to the direct application of them as though they were annuity tables? We are unanimously forced to the latter conclusion. This being so, we take advantage of the instant case—where we have been materially aided by the researches and the arguments of able counsel, who considered all phases of the matter of proper evidence of future losses connected with impairment of earning power—to say that the present worth tables should not be admitted at jury trials.''

These authorities are well reasoned, and are entitled to great respect, but an earlier Massachusetts case, *Copson v. New York, N. H. & H. R. Co.*, 171 Mass. 233, 50 N. E. 613, seems to announce a different rule. An earlier Pennsylvania case, *Faber v. Gimbel Bros.*, 264 Pa. St. 1, 107 Atl. 222, and also a still earlier case, *Seeherman v. Wilkes-Barre Co.*, 255 Pa. St. 11, 99 Atl. 174, seem to indicate a contrary rule.

As opposed to the authorities upon which the appellant relies, the general rule seems to be to class annuity tables with mortality tables and make them admissible under the same rules and limitations. *Reynolds v. Narragansett Electric Lighting Co.*, 26 R. I. 457, 59 Atl. 393; *Baltimore & Ohio R. Co. v. Henthorne*, 73 Fed. 634; *Colusa Parrot Mining & Smelting Co. v. Monahan*, 162 Fed. 276; *Bourke v. Butte Electric & Power Co.*, 33 Mont. 267, 83 Pac. 470; *Gilman v. Dart Hardware Co.*, 42 Mont. 96, 111 Pac. 550; *Secord v. Schroeder Lumber Co.*, 160 Wis. 1, 150 N. W. 971; *Vicksburg & M. R. Co. v. Putnam*, 118 U. S. 545.

It would seem that the cases from which we have quoted furnish ample material for qualifying instructions cautioning the jury against improper use of such tables, but as against the weight of authority we do

not feel justified in holding such tables to be inadmissible.

The question of misconduct of counsel is a serious one, which has caused us no little concern.

Speaking generally, the conduct complained of consisted of a more or less direct attack upon the integrity of one of the medical witnesses produced by the appellant, impugning his motives and his truthfulness, and practically charging him with being a hireling who prostituted his professional services for the fee he received, and yet, in so doing, counsel was astute enough to keep within the record, making but one suggestion, by way of illustration, outside the record, which the court promptly instructed the jury to disregard.

The jurors are the judges of the credibility of witnesses, and are entitled to draw reasonable inferences from the evidence before them as to the truthfulness of any particular witness. Therefore counsel, if he deem such a course advisable, may argue as to what inferences may or should be drawn, and thus attempt to demonstrate from the record that a particular witness has wilfully testified falsely. Such an argument should, however, be conducted calmly and logically and in a manner to direct the attention of the jurors to the logical inferences to be drawn, rather than to incite their prejudices. Proper and appropriate language, as it reads in type, may be delivered properly or improperly. The record before us gives counsel's words, which we cannot condemn without denying a substantial right, but it tells us but very little of counsel's manner in delivering those words. We must not presume that he acted improperly. If his manner was unduly offensive and such as to arouse prejudice in the minds of the jurors, the trial court should, and would, have interfered, or if that would not effect a

cure, he should have set the verdict aside. Having done neither, we are forced to conclude that counsel acted in good faith and kept within the limits of what is permissible.

 Whether respondent was fifty-six or sixty-six years of age, there was undisputed evidence that he worked continuously, without any loss of time, up to the day of the injury, earning $4.28 per day; and there was evidence from which the jury could find that, by reason of the injury, his earning power then ended.

Under these conditions, we cannot say that the verdict was induced by passion and prejudice and we therefore cannot interfere.

The judgment is affirmed.

HOLCOMB, FULLERTON, BEALS, and MILLARD, JJ., concur.