CHARLES H. LEAVE *vs.* BOSTON ELEVATED RAILWAY COMPANY.

Suffolk.   May 15, 1940. — June 27, 1940.

Present: FIELD, C.J., DONAHUE, DOLAN, COX, & RONAN, JJ.

*Evidence,* Competency;  Opinion: expert;  Income tax return;  Of earning capacity.   *Witness,* Direct examination, Cross-examination. *Practice, Civil,* Discretionary control of evidence.

In an action by a professional musician for personal injuries, there was no error in allowing the plaintiff to testify as to specific amounts lost from inability to keep professional engagements because of his injuries and that he had suffered a diminution of earning capacity in a sum equivalent to the total of such amounts.

No error appeared in permitting the plaintiff, a professional musician, to testify at the trial of an action for personal injuries as to the value of his services at the time of the trial.

No error appeared in permitting a witness, at the trial of an action for personal injuries sustained by a professional musician whom he had known professionally for fifteen years, to be asked to describe what he "observed about" the plaintiff "as to his capabilities as a musician and his professional skill in" those years, which he answered by stating, "He was an expert musician," followed by an extended

description, given in reply to a question not excepted to, of what he called an expert and what "goes to make up" the plaintiff's "expertness."

At the trial of an action for personal injuries sustained by a professional musician, expert testimony of other professional musicians was admissible bearing upon the plaintiff's qualifications and earning capacity before and after his injury, and that, notwithstanding the condition of the employment market of musicians at the time of the trial, there was plenty of room for the "fellow at the top."

Evidence as to the extent and permanence of personal injuries sustained by a professional musician, a plaintiff in an action for such injuries, formed a proper basis for actuarial testimony as to the plaintiff's life expectancy and the sum required to provide certain weekly payments over that period.

It was within the discretion of the trial judge to permit the plaintiff's counsel to ask leading questions in his direct examination of an employee of the defendant whom he had called as a witness.

Under §§ 32, 58, of G. L. (Ter. Ed.) c. 62, the trial judge at the trial of an action for personal injuries, where the earning capacity of the plaintiff was an issue, properly refused to permit the plaintiff to be asked if he was willing to give such permission as would make his income tax returns available to the jury or to the defendant's counsel, and to permit a director of the State income tax department to be asked if the department had a practice in regard to disclosure to the taxpayer or his agent.

After full direct, cross, and recross examination of the plaintiff on a material issue, no error was shown in a refusal by the trial judge to permit him to be called again and asked a further question on the same issue.

CONTRACT OR TORT. Writ in the Superior Court dated June 25, 1936.

A verdict for the plaintiff in the sum of $11,810 was returned before *Swift*, J.

*S. C. Rand*, (*M. C. Stewart* with him,) for the defendant.

*E. B. Hanify*, for the plaintiff.

Cox, J. The jury returned a verdict for the plaintiff, the defendant having admitted liability. It could have been found that the plaintiff was a musician of ability and that the injuries he sustained seriously interfered with the practice of his profession. The defendant's exceptions relate to matters of evidence and to the alleged denial of certain requests for rulings.

One group of exceptions relates to the plaintiff's testimony as to his losses from professional engagements that he was unable to keep. It could have been found that he

lost engagements that he had, and some that had been arranged for prior to his injury, and also that he lost money "in the way of wages that . . . [he was] to get from" these engagements. He was allowed to testify, subject to the defendant's exception, to the amount of his losses on this account. During his testimony as to these alleged losses, he used a memorandum that he had prepared, which was later introduced in evidence without objection, and which contained the dates, descriptions of engagements, itemized amounts of alleged losses as to each engagement and the total amount. When this memorandum was offered in evidence, the defendant's counsel stated: "I have no objection. I was going to put it in." [1]

The evidence was competent. *Halloran* v. *New York, New Haven & Hartford Railroad,* 211 Mass. 132, 133. *Barrows* v. *Checker Taxi Co.* 290 Mass. 231, 234, and cases cited. *Doherty* v. *Ruiz,* 302 Mass. 145, 146–147, and cases cited. The judge instructed the jury fully that the element of damage recoverable was not the loss of money as wages but compensation for the diminution of earning power, and he explained the relation of the former to the latter. See *Mitchell* v. *Walton Lunch Co.* 305 Mass. 76, 78.

The plaintiff was allowed to testify, subject to the defendant's exception, as to the fair value of his services as a musician at the time of the trial. His answer to the question objected to, was, the "best market price that I can get, which is $21.60 per week." There was no objection by the defendant to this answer. There was no reversible error. *Rizzo* v. *Cunningham,* 303 Mass. 16, 25, and cases cited. See *Whipple* v. *Rich,* 180 Mass. 477, 479; *Doherty* v. *Ruiz,* 302 Mass. 145. The facts in the case at bar, as to employment of the plaintiff, are distinguishable from those

---

[1] The items in this memorandum covered a period between January 13, 1935, which was the date of the accident to the plaintiff, and July 18, 1935. Referring to an item of $300 in the memorandum, the plaintiff was permitted to be asked subject to the defendant's exception, "You lost?" and answered, "Yes." Subject to further exceptions by the defendant, the plaintiff was asked, "How much in dollars and cents did you suffer in the way of loss or diminution of your earning capacity during that period from January 13, 1935, down to July 18, 1935?" and answered "$1,619.15." This sum was the total of the items stated in the memorandum. — REPORTER.

relating to the status of the plaintiff in *Whipple* v. *Rich*, 180 Mass. 477, 479.

The defendant excepted to a question to a witness that he describe what he observed about the plaintiff as to his capabilities as a musician.[1] The specific objections to the inquiry were that it permitted the witness to go back too far, and also that the matter was not a proper subject for expert inquiry. It appeared that the witness had known the plaintiff professionally for the entire period of time comprehended by the question. The answer, to which no objection was made, was, "He was an expert musician." The question was competent, and if the defendant desired to object to the answer as going beyond, or not being within, the proper scope of the question, it was its duty to call the attention of the judge to this by moving to strike out the answer. *Cashin* v. *New York, New Haven & Hartford Railroad*, 185 Mass. 543, 545–546. This witness was then asked to state, subject to the defendant's exception, how skilful the plaintiff was, and his answer was, "Expert." This was followed by a question that was unobjected to, asking the witness to tell what he called an expert and what "goes to make up his [plaintiff's] expertness." To this question the witness replied at length as to the plaintiff's capabilities, the positions that he had held and what is required of a player of the violin or viola, instruments played by the plaintiff. In view of this answer, we are of opinion that there was no reversible error. Furthermore, the specific objection that has been argued by the defendant, that the questions went beyond the limit of what may properly be put to experts, that plaintiff's counsel was permitted to lead and that the witness was permitted to characterize broadly, does not point to any reversible error.

An orchestra leader testified as to the plaintiff's experience, skill and ability as a musician; that he became conductor for the witness and was also concert master for

---

[1] The specific question here referred to was as follows: "Will you describe what you observed about him as to his capabilities as a musician and his professional skill in 1917 and 1932?" — REPORTER.

three or four years; and that, during a period of sixteen weeks when the witness was absent, the plaintiff served as conductor of the witness's orchestra. He was then permitted to testify, subject to the defendant's exception, that in searching for some one to take his place he looked over the entire list of available musicians in Boston and tried to pick the best man. He then testified, without objection, that he did. He had already been permitted, without objection, to give other reasons why he selected the plaintiff. The same witness, admittedly an expert in matters pertaining to music, was permitted to answer questions, subject to the defendant's exception, as to the effect upon the work of a violinist whose arm was in the condition in which the plaintiff's could have been found to be. The answers, unobjected to, were that, in his opinion, it would spoil his playing entirely, and that he would lose all his skill in playing. This witness and another, whose qualifications as an expert were not questioned, were permitted to testify, subject to the defendant's exceptions, as to the fair value of services such as the plaintiff could perform in his various capacities as a musician, of which there was evidence. The defendant contends, for the same general reasons hereinbefore stated, that it was error to permit these questions. In our opinion there was no reversible error. The plaintiff was entitled to recover for the loss or impairment of his productive power as an individual, and this may be ascertained and estimated according to the nature and scope of his employment or profession. *Stynes* v. *Boston Elevated Railway,* 206 Mass. 75, 77. He was entitled to have the jury informed as to his skill and experience, his ability in his chosen profession and the degree of success that he had attained. *Mangano* v. *Marston,* 298 Mass. 133, 134. "If any distinctions in the value of men's time are admitted there is no reason why the whole actual difference should not be recognized. To this extent a tortfeasor takes the risk of the value of what he destroys." *Braithwaite* v. *Hall,* 168 Mass. 38, 40. If the plaintiff's services had a market value in the profession in which he was engaged, evidence of such market value

might be proved as a fact which the jury might take into consideration in determining the amount of damages to be awarded. *Harmon* v. *Old Colony Railroad,* 168 Mass. 377, 381. See *Cross* v. *Sharaffa,* 281 Mass. 329, 331, 332. The rule is recognized that it is not necessary, and usually not proper, for evidence of impairment of earning capacity to take the form of an estimate of a sum that would compensate for the impairment, and the assessment of damages for such impairment rests largely upon the common knowledge of the jury or other fact finding tribunal, sometimes with little aid from evidence. *Doherty* v. *Ruiz,* 302 Mass. 145, 147, and cases cited. But in the assessment of damages for impairment of earning capacity, all relevant facts are to be considered, and helpful evidence is admissible although it does not furnish any mathematical evaluation of the impairment. In our opinion there was no reversible error as to the matters that have just been considered.

One of the experts who had known the plaintiff for a long time, and had employed him as a conductor for his orchestra, and who testified extensively as to the plaintiff's ability and experience, was cross-examined respecting the present plight generally of musicians as to employment. On redirect examination he testified that there was plenty of room for the "fellow at the top." It was agreed that the witness was "sort of at the top." In view of the apparent understanding at the trial as to the significance of the words "at the top," the contention of the defendant that the inquiry was not a proper subject of expert testimony cannot be sustained. *Mangano* v. *Marston,* 298 Mass. 133.

The plaintiff testified, without objection, that he had recently taken an audition for the Boston Symphony Orchestra but that he did not get the work. He further testified respecting his inability to complete the audition and that within a few minutes after he started it he was completely crippled. He was cross-examined as to what efforts he had made to obtain employment after the accident. The defendant also brought out on cross-examina-

tion of another witness that the plaintiff had never played in the symphony orchestra or in any of its concerts, and had never tried out for it until ten days before the trial. On redirect examination he was permitted to tell how it was that he applied for the audition, and gave as a reason for applying, that he did not want to neglect any opportunity to get work. This evidence was admitted "in view of the . . . [cross] examination." We think there was no reversible error.

An actuary was permitted to testify, subject to the exception of the defendant, as to the life expectancy of the plaintiff and the sum required to provide weekly payments of certain specified sums over this period of expectancy, assuming four per cent interest in the discount of future payments, such sum to be exhausted at the end of the period. There was evidence that the plaintiff's right arm was in a condition of chronic disability; that if an operation were performed it was doubtful if the result would enable the plaintiff to return to his concert work; that it was impossible to predict the duration of the condition of the arm; that the arm condition would spoil his playing entirely, and would cause him to lose his professional skill. We are of opinion that the evidence of the plaintiff's condition afforded a basis for the admission of the testimony that was objected to. *Copson* v. *New York, New Haven & Hartford Railroad*, 171 Mass. 233. *Rooney* v. *New York, New Haven & Hartford Railroad*, 173 Mass. 222, 226–227. *Hanley* v. *Boston & Maine Railroad*, 286 Mass. 390, 399. The judge instructed the jury as to the use of the expectancy tables.

The plaintiff called the defendant's motorman as a witness and was permitted to put leading questions to him relative to the collision of the two cars of the defendant as the result of which the plaintiff was injured. The defendant objected to several of the questions on the ground that they were leading and that the plaintiff was being permitted to cross-examine his own witness. It is within the discretion of the trial judge to allow leading questions to be put, even in direct examination. *Commonwealth* v. *Meserve*, 154

Mass. 64, 68, and cases cited. *Gray* v. *Kelley*, 190 Mass.
184, 187. *Commonwealth* v. *Knight*, 257 Mass. 421, 424.
The defendant admitted liability, and it does not appear
that there was any abuse of discretion by the trial judge
in allowing the questions to be put. It is unnecessary to
consider whether under the provisions of G. L. (Ter. Ed.)
c. 233, § 22, as appearing in St. 1932, c. 97, § 1, the plain-
tiff, as of right, could cross-examine the motorman.

The plaintiff testified on cross-examination that he be-
lieved he filed a State income tax return in 1935, but that
he did not keep copies of returns that he filed. He was
asked, in substance, if he was willing to give the defend-
ant's attorney permission to obtain a copy of "the return,"
to give such permission as might be necessary to make avail-
able to the judge and jury his income tax returns filed
with the Commonwealth for 1934 and 1935, and whether he
filed accurate returns for those years. The questions were
excluded subject to the defendant's exceptions. A director
of the income tax department testified that, in response to
a summons, he had with him the income tax returns of
the plaintiff for 1934 and 1935. G. L. (Ter. Ed.) c. 62,
§ 58, was read to the jury. The witness was asked if there
was any penalty for disclosing the contents of the returns
to the plaintiff; he was also asked if the department had
a practice in regard to the disclosure to the taxpayer or
his agents; and these questions were excluded subject to
the defendant's exception. The plaintiff was then recalled
by the defendant and was asked if he was willing "to put
the income tax returns in your possession so that I may
see them in this case." The question was excluded, and
the judge stated that a question of privilege was involved,
which the plaintiff did not have to waive, and that no
inference should be drawn against him for not doing so.

G. L. (Ter. Ed.) c. 62, § 58, provides that the disclosure
by the commissioner (of corporations and taxation) or by
any deputy, assistant, clerk or assessor, or other employee
of the Commonwealth, or of any city or town therein, to
any person but the taxpayer or his agent, of any informa-
tion whatever contained in or set forth in any return filed

under said chapter, other than the name and address of the person filing it, except in proceedings to collect the tax or for purpose of criminal prosecution under said chapter, shall be punished by fine or imprisonment or both, and by disqualification from holding office for a period not exceeding three years, as the court shall provide. Said c. 62 provides for the taxation of income from annuities, professions, employments, trades and business, and for returns in relation thereto; and, among other things, that returns shall be under oath and filed with the appropriate tax officials of the Commonwealth (§ 24).

When the Legislature first enacted an income tax law by St. 1916, c. 269, it was provided in § 16 that the required returns "shall be open to the inspection of the tax commissioner" and his assistants when acting under his authority, and of the income tax assessors and of their assistants when acting under their authority, and it was further provided in the same section that the disclosure by any of these officers or other employee of the Commonwealth, or of any city or town therein, to any person of any information whatever contained in or set forth by any such return, other than the name and address of the person filing it, except in proceedings to collect the tax "or by proper judicial order," should be punishable. Said section further provided that lists or indexes of persons who had filed returns should be kept in the offices of each income tax assessor and should be open to public inspection. St. 1918, c. 257, § 71, amended said § 16 by permitting the disclosure of information contained in the return to "the taxpayer or his agent . . ." St. 1919, c. 50, further amended said § 16 by substituting for the provision relative to the keeping of lists of persons who had filed returns, the following provision: "The tax commissioner shall, upon the request of any inhabitant of the commonwealth, state whether or not any designated person has filed an income tax return for the current or any prior year." Said § 16 was further amended by St. 1919, c. 117, by inserting a provision that the "books, accounts and other records in the hands of the tax commissioner, except re-

turns, shall be open to the inspection of the auditor of the commonwealth and of his deputies, assistants and clerks when acting under his authority for the purpose of auditing the accounts of the tax commissioner," and by imposing upon the auditor the same penalty for the disclosure of information contained in the returns as that already applicable to the tax commissioner, other officers and employees. When the General Laws were enacted to take effect January 1, 1921, the provisions originally contained in § 16 of said St. 1916, c. 269, as amended, were separated and made the subject matter of two independent sections, that is, § 32 of G. L. c. 62 containing the provisions relative to the persons to whom the returns should be open for inspection, and § 58, grouped with other sections under the subtitle "Penalties," containing the provisions relative to the penalties for the disclosure of information in any return. Said § 58 was amended by St. 1923, c. 402, § 1, which had its origin in a bill accompanying a petition of the commissioner of corporations and taxation for legislation to protect tax returns except for purposes of collecting taxes. (Journal of the Senate [1923] p. 606.) One effect of this amendment was to eliminate the clause permitting the exception of disclosure "by proper judicial order."

By St. 1903, c. 437 (the business corporation law), § 48, it was provided for the first time that a corporate tax return filed with the tax commissioner "shall be open only to the inspection of the tax commissioner, his clerks and assistants, and such other officers of the commonwealth as may have occasion to inspect it for the purpose of assessing or of collecting taxes." This provision was continued in effect by St. 1914, c. 198, § 6. In *Brackett* v. *Commonwealth*, 223 Mass. 119, decided in 1916, it was held that the original tax returns of the petitioning corporation were inadmissible. In considering the effect of the provision of the law, as it then stood, relative to the accessibility of corporate tax returns, the court said, at page 126, that it "indicates a legislative determination not only that it [the return] shall not be open to general observation, but that it shall not be used for any purpose other

than that stated in the statute. Thus its evidential character is also affected. The statute manifests a purpose that such returns shall not be used as evidence in the ordinary case. *Bowman* v. *Montcalm Circuit Judge*, 129 Mich. 608, 610. The reason for treating tax returns as not open to use by usual methods has been recognized. *Boske* v. *Comingore*, 177 U. S. 459, 469. *In re Joseph Hargreaves, Ltd.* [1900] 1 Ch. D. 347." This case was followed by that of *James Millar Co.* v. *Commonwealth*, 251 Mass. 457, decided in 1925. The law relative to the accessibility of corporate returns was, in substance, unchanged, St. 1918, c. 184, § 5 (see St. 1923, c. 402, § 3; G. L. [Ter. Ed.] c. 63, § 71A; St. 1935, c. 150; St. 1939, c. 451, § 30), and it was held that copies of the corporation excise tax return for the year 1920, signed and sworn to by an officer of the petitioner, were rightly excluded. It was said, at page 464, that "the secrecy of the return should not be destroyed or minimized indirectly through the cross-examination of the officer of the corporation who filed the report." In *Thaden* v. *Bagan*, 139 Minn. 46, decided in December, 1917, it appeared that the plaintiff's claim was a "credit," which was required by the tax law to be listed by him. The tax law provided, among other things, that such list should be open to the inspection of certain officials, but that the details of it should be disclosed to no other person "except by order of court," and that any officer who should disclose such details should be liable to punishment. It was held that by the words "except by order of court" it was intended that when an issue was on trial upon which a disclosure was material, the court might require it; that the words did not limit the duty of disclosure to a case where public revenue was directly involved, and that it did not restrict courts in their judicial investigations and did not make their rulings discretionary. "Saving obedience to the ruling of a court, the prohibition is absolute."

We are of opinion that when the Legislature, by St. 1923, c. 402, § 1, amended the law relative to the disclosure of information contained in returns by striking out

the words "or by proper judicial order," it was intended thereby to affect the theretofore possible evidential character of the return. It is true that § 71A of said c. 63, and the predecessors of that section, are explicit in their terms that the returns shall "be open only" to certain officials, while in the case of § 32 of said c. 62, the provision is that the returns shall "be open to the inspection of" certain public officials. But in connection with said § 32 there must be read the provisions of said § 58 of the same chapter, two sections, as heretofore pointed out, that were originally one, wherein the penalties are provided for the unlawful disclosure of information contained in a return.

We are of opinion that what was said in the case of *James Millar Co.* v. *Commonwealth*, 251 Mass. 457, relative to the use of corporation excise tax returns as evidence is applicable to the situation in the case at bar, and that in order to give §§ 32 and 58 of said c. 62 the force and effect that the Legislature intended they should have, those provisions ought not to be circumvented by any indirect attack, such as by resorting to inquiry of the individual who has made the tax return as to its substance or contents. Even in a case where a statute requiring the report of certain information to public authorities does not, in terms, make it privileged, but where there was no provision in the statute giving the right to the public to inspect the report or providing for its use, except as declared in the statute, it was held that the report was not admissible against the one making it as an admission by him. *Gerry* v. *Worcester Consolidated Street Railway*, 248 Mass. 559, 566–568. In *Williams* v. *Brown*, 137 Mich. 569, it appeared that a statute provided that no tax statement made by a taxpayer "shall be used for any other purpose except the making of an assessment for taxes as herein provided, or for enforcing the provisions of this act." A tax statement evidently made by one of the parties, who was a witness, was offered in evidence, but withdrawn. When the maker became a witness, the tax statement was placed in his hands, after the court had again ruled it out,

and he was asked and required, under objection, to testify what values he then placed upon the properties in question. These values were very much lower than those to which he had testified on direct examination. The court said, at page 573: "The effect was to place the contents of these statements before the jury as effectually as though they had been introduced and read before them. We think this was within the prohibition of the statute. The purpose of the statute evidently is to make such statements privileged, except for the use specified in the statute. . . . The effect inevitably was to discredit the witness before the jury. It was error to place them in the hands of the witness, and elicit from him their contents."

We are of opinion that there was no error in the matters complained of relating to the income tax returns or in the exclusion of questions put to the plaintiff in relation thereto.

One exception of the defendant in this connection remains to be considered. Just before the evidence was closed, the defendant recalled the plaintiff, who had already been examined, cross-examined and recross-examined. Thereupon, at a bench conference, the defendant proposed to ask the plaintiff whether there was any accurate record other than the income tax returns, to which reference had just been made, of his income for the years 1934 and 1935 that was available, and the question was excluded subject to the defendant's exception. We are of opinion that what has already been said disposes of this exception adversely to the defendant. Furthermore, at the very outset of the plaintiff's cross-examination, he testified as to his average weekly earnings for 1934 and that he kept no record of them. From the record it appears that he was cross-examined in detail as to his income for that year and for 1935. The statement of his engagements, hereinbefore referred to, was in evidence, and the plaintiff was cross-examined as to the various items in it. Again in cross-examination he testified that he had nothing to show accurately his income for 1934 and that the statement in evidence was the most accurate record that he had of his income for 1935 (the year in which he was injured); that

this statement was not intended to show the amount that he received, although some of the amounts he did receive appeared therein; that he had no record that showed accurately what he received for the balance of 1935. Nothing had been brought out on redirect examination of the plaintiff that had any relation to the question that was asked. In the circumstances, we think it was within the discretion of the judge whether to permit further examination of the plaintiff and that there was no abuse of discretion. *Jennings* v. *Rooney,* 183 Mass. 577, 579, and cases cited. *Commonwealth* v. *Sacco,* 255 Mass. 369, 424. See *Ward* v. *Fuller,* 7 Gray, 179; *Perrott* v. *Leahy,* 302 Mass. 318, 323.

There remains for consideration the defendant's exceptions to the denial of its requests for rulings. We have examined all of the relevant exceptions that have been argued. The charge is printed in full in the record. Although the judge did not give the several requests in the precise language in which they were framed, as he was not required to, nevertheless their subject matter was adequately and properly covered and there was no error.

*Exceptions overruled.*